355 So.2d 1111 (1978)
CITY OF MONTGOMERY et al.
v.
James COLLINS et al.
SC 2481.
Supreme Court of Alabama.
January 27, 1978.
*1112 Walter J. Knabe and Randall C. Morgan, Montgomery, for appellants.
Thomas T. Gallion, III, Charles P. Miller, Montgomery, for appellees.
BEATTY, Justice.
The City of Montgomery appeals from an order enjoining it from expending municipal funds for the legal defenses of three Montgomery police officers. We reverse and remand.
The complaint was brought as a class action by James and Margaret Collins, city taxpayers, and arose out of the indictment of the officers on the charge that they had committed the offense of perjury in testimony each gave before the grand jury of Montgomery County during the June, 1976 session. Subsequently, it was alleged, the city funded the expense of legal fees to private attorneys and costs to provide defenses *1113 for the officers, in violation of federal and state constitutional provisions. The city's motion to dismiss alleged that the matter was mooted by the dismissal of the officers from the police force and by the entry of nolle prosequi judgments on the charges against them. That motion was overruled, and at the final hearing held ore tenus, the trial court held that the city had exceeded its corporate powers:
It is the opinion of this Court that a municipal corporation has the power to employ counsel to defend city officials, including police officers, in actions brought against the officials, whether civil or criminal, where the corporation has a proper interest in the action, the acts allegedly committed were done by the officials in the discharge of their corporate duties, and the officials in performing said duties acted honestly and in good faith. See City of Birmingham v. Wilkinson, 239 Ala. 199 [194 So. 548] (1940). However, it is the further opinion of this Court that the corporation's power to employ counsel in defense of criminal actions against such officials ceases upon indictments being returned by a Grand Jury. There is a vast difference between criminal actions commenced by the filing of an affidavit by an individual and the filing of an indictment by a Grand Jury which is a constituent part of the court.
In this case, the Court not only finds that indictments have been returned against Thomas E. Litaker, Richard Koerner and Ronald A. Bush but it is also of the opinion that perjury, the offenses with which they are charged in the indictments, cannot possibly be construed as acts committed honestly and in good faith in the discharge of their corporate duties.
It is therefore the opinion of this Court that the defendants have exceeded their corporate powers in the expenditure of public funds for the defense of the criminal acts set out in the Complaint and should be enjoined from the further payment of legal fees in the defense of Thomas E. Litaker, Richard Koerner and Ronald A. Bush.
The fact that these individuals are no longer employed by Defendant City of Montgomery, that the Defendants have ceased the payment of legal fees on their behalf, and that the pending criminal cases against them have been nol prossed, with prejudice, since the commencement of this action is no cause for dismissal of this action. See Gillespie v. Gibbs, 147 Ala. 449 [41 So. 868] (1906).
Initially, the city contends that the trial court erred in denying its motion to dismiss which raised the absence of a justiciable controversy because the issue had become moot.
We adhere to the view that moot questions will not be resolved under the guise of a declaratory judgment. Birmingham Trust National Bank v. Garth, 263 Ala. 121, 81 So.2d 590 (1955); however that exception has no applicability here. This was a class action brought by and on behalf of taxpayers who question the legality of payments already made from municipal funds, and it appears from the record that the possibility still exists that such payments would be made currently upon the presentation of fee statements from private lawyers. Thus there is a real controversy which affects the rights of all parties to this suit even though the persons on whose behalf the payments were made will not be proceeded against by criminal prosecution. The case of Shadix v. City of Birmingham, 251 Ala. 610, 38 So.2d 851 (1949), cited by the city, does not apply because there was neither a threat to the rights of either party nor any actual or threatened loss alleged in that complaint.
The principal issue is whether the city may lawfully pay municipal funds to private counsel in the defense of its police officers indicted for the commission of crime. This is apparent from the trial court's final judgment which restricted the city's power in any case when the officer has been indicted by a grand jury. At the outset it should be made clear that this issue does not involve any specific provision of the municipal charter of the City of *1114 Montgomery but is presented to us by both sides as a question of municipal law as it is generally applied in this state.
Although this precise issue was not dealt with in City of Birmingham v. Wilkinson, 239 Ala.199, 194 So. 548 (1940), that decision recognized an, "enlarging sphere of interests of a city like Birmingham, [and inferentially like Montgomery] and of implied power in the city to employ legal counsel or other agents when . . . needed." Ibid at 203, 194 So. at 551. This is at least a tacit acknowledgement of the impact upon their implied powers which their growth and its accompanying complexities have for municipalities. That is, matters of "proper corporate interest," recognized as the polestar in questions of this kind, do not remain static but expand with the growth of other public interests. So that if it was a matter of "proper corporate interest" for the City of Montgomery to defend its policemen here on the charge that they had perjured themselves, the decision to do so would be justified.
The record discloses that these city policemen appeared before the grand jury in the performance of their official duty. The indictments arose out of that performance of corporate duty. Through its mayor and council the city then took the action complained of presently. Whether that action was a matter of "proper corporate interest" might, at least in part, depend upon the existence of a risk of litigation against the city itself should the perjury prosecutions have proved successful.
The case of Nesmith v. Alford, 318 F.2d 110 (5th Cir. 1963) bears analogies to the instant controversy. In a background of racial discord the plaintiffs, white out-ofstate residents, were arrested by city officials on a charge of disorderly conduct because they joined with a black group to lunch in a cafe in a black neighborhood. Their convictions in recorder's court were appealed to the circuit court and resulted in jury verdicts of not guilty. The plaintiffs then filed civil actions in federal district court, alleging false imprisonment, malicious prosecution, and violations of civil rights. The trial of that case disclosed the activities of the city's law enforcement officials dealing with the plaintiffs' arrest, incarceration and prosecution. A jury verdict in favor of the city's commissioner of public affairs, the chief of police, and a police sergeant was reversed. One of the grounds for reversal concerned the admissibility of evidence pertaining to the civil rights violation alleged under 42 U.S.C.A. § 1983. The reviewing court found that under the evidence previously admitted all of the defendants had violated one or more of the civil rights of the plaintiffs, and went further at pages 125-6:
In connecting the acts with the Defendants, civil liability for money damages of the respective Defendants would depend on traditional tort principles. . . . Unless . . . this is established as a matter of law, liability of the respective individuals as to such conduct would stand or fall on jury findings, express or implied, showing personal action or that imputed by conspiracy, agency, partnership, respondeat superior, or the like.
. . . . . .
Of course, for a claim under § 1983, a conspiracy as such is not an indispensable element as it is under § 1985. But it may be charged as the legal mechanism through which to impose liability on each and all of the Defendants without regard to the person doing the particular act. Conspiracy is asserted in that situation on more or less traditional principles of agency, partnership, joint venture, and the like. (emphasis supplied)
Because a conspiracy might provide a basis for a civil cause of action, Snyder v. Faget, 295 Ala. 197, 326 So.2d 113 (1976), and because a municipality may be made a party defendant in such an action, Jackson v. City of Florence, 294 Ala. 592, 320 So.2d 68 (1975); Tuskegee Institute v. May Refrigeration Co., Inc., 344 So.2d 156 (Ala.1977), it would be within the reasonable scope of "proper corporate interest" for the municipality to attempt to protect itself and its officers against future civil litigation brought under agency principles by *1115 defending their agents against criminal charges arising out of the same general circumstances with the view of obtaining their acquittal. A judgment of conviction in a criminal case is admissible, as a general rule, in a civil case if the act in question is material in the civil action. Pritchett v. Freeman, 36 Ala.App. 222, 54 So.2d 314 (1951); Rule 803(22), Federal Rules of Evidence. Moreover, the officials in charge of the administration of municipal government might reasonably conclude that such action is necessary to the good morale of the police department, or for recruitment and retention purposes. Or there may exist other equally compelling reasons falling within the proper corporate interest. City of Corsicana v. Babb (Tex.Com.App.) 290 S.W. 736 (1927).
Nor is it proper to make the city's decision to defend or not to defend rest upon the legal distinction between a prosecution initiated by indictment and one begun by complaint. Although there are obvious differences between the two by way of form, and the "sifting process" for each is different, primarily because of the nature of the offenses encompassed by each, see generally McGee, Alabama Criminal Practice 93-95, the fact that an indictment is more formal in procedure does not give it more substance than its function entails. As Cates, J. so aptly put it in Smith v. State, 50 Ala.App. 310, 311, 278 So.2d 759, 760 (1973), an indictment is not "half a conviction:"
Indeed, an indictment casts not a single pebble of guilt in the scale against a criminal defendant. Rather, it is only the device which allows the State the opportunity to convince (or not) a petty jury beyond a reasonable doubt of the asserted guilt.
And its function is to inform the accused of the crime with which he is charged. Crews v. State, 40 Ala.App. 306, 112 So.2d 805 (1959). But if we were to hold that a municipality's discretion to act in these premises ceased upon the finding of an indictment, we would be giving to that document more of a substance than it legally possesses. That is, the mere finding of an indictment, because it raised the possibility of a criminal trial, would circumscribe the discretion of municipal officials to determine whether the city's interests required a defense to that charge, even though the indictment is only informational. Such an unreasonable rule cannot be allowed to inhibit the power of duly elected municipal officials to exercise their responsibilities in defining their city's "proper corporate interest;" whether their decision is wrong in this connection is for their constituency to decide.
Since the action complained of is properly within the scope of that corporate interest, i. e., for the benefit of the city, and thus identified with a public purpose, it is not offensive under Section 94, Alabama Constitution of 1901. Contrary to the argument of the plaintiffs, State v. Homan, 38 Ala.App. 642, 92 So.2d 51 (1957) lends support to that position. After noting in that opinion that Count 2 charged a misappropriation of public moneys under Tit. 41, § 221, Alabama Code of 1940, (for the private benefit of another), Cates, J., stated:
If on trial it should turn out that the employment and payment [of private counsel] were for a corporate purpose, Carter v. Town of Muscle Shoals, 242 Ala. 519, 7 So.2d 74 . . . Count 2 would fall. . . . (Ibid 38 Ala.App. at 646, 92 So.2d at 54) (emphasis supplied)
Although the employment here concerned the defense of a criminal case, it arose through a contract the performance of which could benefit the city as well as the private attorneys. Thus it was not the grant of public money "in aid of, or to any individual" under Section 94. Rogers v. City of Mobile, 277 Ala. 261, 169 So.2d 282 (1964).
Finally, plaintiffs have moved in this Court for an award of attorneys' fees. They did not raise the issue of attorneys' fees in the court below, Fountain v. Vredenburgh Saw Mill Co., 279 Ala. 68, 181 So.2d 508 (1965), but had they been granted in that court it would have been error. Attorneys' fees are not allowable unless *1116 authorized by statute or contract. Sadler v. Ram Construction Co., Inc., 344 So.2d 1199 (Ala.1977). Neither has been proved or pointed out to us. Additionally, it appears from their complaint that plaintiffs specifically avoided a request for an award of attorneys' fees, viz:
Award Complainants their cost in this action, but specifically not including an award of attorney's fee. . . .
For these reasons the order of the circuit court is reversed and the cause is remanded to that court for an order not inconsistent with this opinion.
REVERSED AND REMANDED.
MADDOX, JONES and SHORES, JJ., concur.
TORBERT, C. J., concurring specially.
TORBERT, Chief Justice (concurring specially):
I concur in the conclusion reached by the majority and agree with their reasoning in regard to what constitutes a "proper corporate interest."
In this case, municipal police officers were indicted for a criminal offense. The question is whether their activities were in furtherance of the corporate interest of the municipality. These criminal charges, if proved, would not further the corporate interest. However, the difficulty is that these employees were charged, not convicted, when the municipality expended public funds for their defense.
In such cases, I think it incumbent upon the governing body to make some preliminary inquiry as to whether the "proper corporate interest" of the municipality was being served, and that some specific action be taken to approve the expenditure of public funds. For example, in the case cited by the majority, the payment of legal fees by the City of Birmingham to defend its commissioners was approved by the adoption of a resolution by the Commission. City of Birmingham v. Wilkinson, 239 Ala. 199, 194 So. 548 (1940). My review of the record in this case fails to show any such action, i. e., the adoption of a resolution specifically authorizing the expenditure of funds to defend these police officers. This type of action would ensure that the governing body of the municipality considered the matter and made a determination that these officers were, in their opinion, acting in furtherance of the corporate interest before the expenditure of public funds was authorized.