## C. Lavinia Beckett, et al.

### v.

## Board of Supervisors of Accomack County, et al.

Record No. 841153

January 15, 1988

Present: All the Justices

*Denise W. Bland* for appellants.

*Anthony F. Troy (John K. Burke, Jr.; Mays, Valentine, Davenport & Moore*, on brief), for appellee C. M. Williams, Jr.

No briefs or arguments for appellees Board of Supervisors of Accomack County, Tyler and Lewis, and Mapp and Mapp.

STEPHENSON, J., delivered the opinion of the court.

The dispositive question in this appeal is whether the trial court erred in refusing to invalidate a County Board of Supervisors' allowance of attorneys' fees to law firms that represented the County's administrator in the defense of criminal charges.

Six freeholders of Accomack County[1] instituted this suit pursuant to Code § 15.1-550[2] to challenge a decision of the Accomack County Board of Supervisors (the Board) allowing payment of certain legal fees incurred by C. M. Williams, Jr., the County

---

[1] The freeholders are C. Lavinia Beckett, Helen J. Burford, Richard I. Burford, Thelma G. Chapman, F. Thomas Chapman, and Teresa M. Kelly.

[2] Code § 15.1-550, as amended by Acts 1982, c. 173, provides in pertinent part as follows:

When any claim has been allowed by the board [of supervisors] against the county which, in the opinion of [the Commonwealth's Attorney or the County Attorney], or any six freeholders of the county is improper as to form or proof or illegal, [the Commonwealth's Attorney or the County Attorney] shall seek the advice of the Attorney General as to legality . . . or such freeholders may appeal the decision of the board to the circuit court of the county.

Administrator. The fees were incurred in connection with Williams' successful defense of charges that he had violated certain provisions of the Virginia Conflict of Interests Act (the Act), former Code §§ 2.1-347 through -358 (1979 Repl. Vol.) (repealed by Acts 1983, c. 410).

The six freeholders initially sued only the Board. Subsequently, however, Williams was added as a party defendant and the law firm of Tyler and Lewis as well as the law firm of Mapp and Mapp were granted leave to intervene.[3] After a hearing, the trial court concluded that the payment was proper and dismissed the suit. This appeal ensued.

The facts are undisputed. In 1982, Williams, as County Administrator, undertook the sale of a number of used automobiles belonging to the County. Williams knew that his son, Carl, was interested in purchasing a used car. Williams, therefore, asked the County's Commonwealth's Attorney whether Carl could purchase an automobile from the County without violating the Act. The Commonwealth's Attorney advised Williams that Carl legally could submit a bid on the cars.

The County advertised for sealed bids on the cars, and Carl submitted bids on two vehicles. On May 6, 1982, an assistant County administrator conducted a public opening of the bids. Carl was not the high bidder on either automobile. The amounts of all bids were public knowledge.

Thereafter, Williams was advised by the official who conducted the sale that a number of complaints had been lodged concerning the manner in which the sale had been conducted. There were claims of irregularities in advertising the sale and of not having made some of the automobiles available for public inspection prior to the sale.

Williams, therefore, decided to reject the first set of bids and conduct a second sale. The second sale was advertised for May 25, 1982. When the bids were opened, Carl's bids of $1,500 on each of two automobiles were highest. Complaint was made regarding Carl's bids. The Commonwealth's Attorney investigated the matter and concluded that Williams had not violated the Act.

In June 1983, a grand jury returned three indictments against Williams, alleging violations of the Act. One indictment charged

---

[3] A third law firm that received payment from the Board, Mays, Valentine, Davenport & Moore, was not made a party defendant.

Williams with attempting to purchase two automobiles "at a sale made by him in his official capacity or by the governmental agency of which he is an officer or employee," in violation of former Code § 2.1-349(3) (1979 Repl. Vol.).[4] In a second indictment, Williams was charged with purchasing two automobiles on May 25, 1982, "at a sale made by him in his official capacity or by the governmental agency of which he is an officer or employee," in violation of former Code § 2.1-349(3) (1979 Repl. Vol.). The third indictment charged that on May 6, 1982, Williams "use[d] information gained by virtue of his employment as an officer or employee of the County . . . for his personal gain or benefit," in violation of former Code § 2.1-351(b) (1979 Repl. Vol.).[5]

Williams retained the Richmond law firm of Mays, Valentine, Davenport & Moore and the Parksley law firm of Tyler and Lewis to serve as his counsel in the trial of the indictments. The firm of Mapp and Mapp in the town of Keller also was retained by Williams to assist in trial preparations.

At trial, the indictment charging Williams with attempting to purchase automobiles was dismissed on the ground that it was barred by the applicable statute of limitations. Trial on the indictment charging the purchase of the automobiles resulted in a hung jury. The trial court declared a mistrial, and Williams was not retried on this indictment. The Commonwealth's evidence relating to the third indictment was struck by the court on the ground that it was insufficient as a matter of law. Williams, therefore, was not convicted on any of the indictments.

At a meeting on November 16, 1983, the Board authorized reimbursement of the attorneys' fees Williams had incurred. Payment was stopped on checks issued by the county treasurer, however, pending an Attorney General's opinion as to the validity of

---

[4] Former Code § 2.1-349(3) (1979 Repl. Vol.) prohibited an officer or employee of any governmental agency from being "a purchaser at any sale made by him in his official capacity or by the governmental agency of which he is an officer or employee." Former Code § 2.1-354 (1979 Repl. Vol.) provided that any public official who willfully violated the Act was guilty of a misdemeanor.

[5] Former Code § 2.1-351(b) (1979 Repl. Vol.) provided that no officer or employee of any governmental agency shall "[d]isclose to any person not entitled thereto, information gained by virtue of his office or employment, nor otherwise use such information for his personal gain or benefit."

the claim. By letter dated December 19, 1983, the Attorney General opined that payment legally could be made.[6]

Thereafter, on December 21, 1983, the Board adopted the following resolution:

> BE IT RESOLVED, that the Accomack County Board of Supervisors, now that the Attorney General for the Commonwealth of Virginia has ruled, affirms its intent that the attorneys' fees for C. M. Williams, Jr., County Administrator, be paid as previously intended and as now intended; that payment of such fees is a ratification, pursuant to authority as set forth in Section 15.1-19.2 of the Code of Virginia, 1950, as amended, of the employment of the law firms previously employed as counsel for C. M. Williams, Jr., County Administrator; that C. M. Williams, Jr., employed counsel to defend him in actions which were undertaken by him in his capacity as County Administrator and thus was employing such counsel on behalf of the office of County Administrator and thus on behalf of the County; and
>
> BE IT FURTHER RESOLVED, that funds for the payment of the above expenditure be taken from the appropriation in the budget for contingencies.

 In a freeholder's appeal of a Board's decision to pay a claim, the freeholders must carry the burden of proving that the claim is "illegal." Code § 15.1-550. In the present case, the Board relied upon Code § 15.1-19.2 as authority for paying the claim. Code § 15.1-19.2 provides in pertinent part:

> Notwithstanding any other provision of law, the governing body of any county, city, town, or political subdivision may employ the city attorney, the town attorney, or the attorney for the Commonwealth, if there be no city attorney or town attorney, or other counsel approved by such governing body to defend it, or any member thereof, or any officer of such county, city, town, or political subdivision or employee thereof, or any trustee or member of any board or commis-

---

[6] The Attorney General stated that pursuant to Code § 15.1-19.2, a County Board of Supervisors is authorized "to pay for legal expenses incurred by its employee in defending himself against criminal charges brought as a result of his acts in discharging his official duties."

sion appointed by the governing body in any legal proceeding to which such governing body, or any member thereof, or any of the foregoing named persons may be a defendant, *when such proceeding is instituted* against it, or them *by virtue of any actions in furtherance of their duties* in serving such county, city, town or political subdivision as its governing body or as members thereof or the duties or service of any officer or employee of such county, city, town or political subdivision or any trustee or any member of any board or commission appointed by such governing body.

All costs and expenses of such proceedings so defended shall be charged against the treasury of the county . . . .

(Emphasis added.) As shown by the italicized portion of this section, if the criminal proceeding against Williams was instituted "by virtue of any actions in furtherance of [his] duties," then payment of the claim was authorized.[7]

The Board approved the claim after finding that the criminal proceeding was instituted against Williams by virtue of actions taken by him in furtherance of his duties as County Administrator. Upon appeal of the Board's decision by the six freeholders, the trial court ruled that the claim was legal, concluding that the undisputed facts "support a finding by the Board of Supervisors that the acts by [Williams] were not for himself, but were instead acts of his on behalf of the county." We agree.

As County Administrator, Williams was responsible for the public sale of cars owned by the County. Prior to the sale, Williams inquired of the Commonwealth's Attorney whether his son, Carl, could bid for and purchase a car without violating the Act. The Commonwealth's Attorney advised Williams that Carl legally could submit a bid.

---

[7] Following the trial court's decision in this case, the General Assembly enacted Code § 15.1-19.2:1, which provides in pertinent part:

If any officer or employee of any county . . . shall be investigated, arrested or indicted or otherwise prosecuted on any criminal charge arising out of any act committed in the discharge of his official duties, and no charges are brought, or the charge is subsequently dismissed, or upon trial he is found not guilty, the governing body of the county . . . may reimburse the officer or employee for reasonable legal fees and expenses incurred by him in defense of the investigation or charge, the reimbursement to be paid from the treasury of the county . . . .

Acts 1984, c. 394.

After the bids were opened, the official who conducted the sale informed Williams of several complaints concerning advertising and availability of times for public inspection of the vehicles. None of these complaints related to Carl's participation in the bidding process.

Because of the complaints, Williams rejected the first set of bids and directed that a second sale be conducted. All bidders were made aware of this. Moreover, the amounts of the previous bids had been revealed at the first public bid opening and, thus, were public knowledge. On the second round of bids, Carl submitted the highest bids on two of the automobiles.

The six freeholders have failed to carry the burden of showing how the actions taken by Williams were *not* in the furtherance of his duties as County Administrator. To the contrary, the record supports the trial court's finding that Williams was acting on behalf of the County. We hold, therefore, that the Board properly approved Williams' claim under Code § 15.1-19.2.

Accordingly, the judgment of the trial court will be affirmed.

*Affirmed.*