NOTICE: Under Supreme Court Rule 367 a party has 21 days after the filing of the opinion to

request a rehearing. Also, opinions are subject to modification, correction or withdrawal at

anytime prior to issuance of the mandate by the Clerk of the Court. Therefore, because the

following slip opinion is being made available prior to the Court's final action in this matter, it

cannot be considered the final decision of the Court. The official copy of the following opinion

will be published by the Supreme Court's Reporter of Decisions in the Official Reports advance

sheets following final action by the Court.

                                    

               Docket No. 78181--Agenda 9--November 1995.

       WENDELL WRIGHT et al., Appellees, v. THE CITY OF DANVILLE,

                               Appellant.

                    Opinion filed December 19, 1996.

                                    

     JUSTICE NICKELS delivered the opinion of the court:

     Plaintiffs, Ernie A. Cox, Jerome D. Brown, and Raymond T.

Randall, former commissioners of the City of Danville, Kevin

Scharlau, as executor of the estate of former commissioner Wilbur

Scharlau, and Wendell Wright, former corporation counsel, filed a

complaint seeking reimbursement from the city of attorney fees and

litigation expenses incurred in defending the criminal prosecution

of the commissioners and corporation counsel. The circuit court of

Vermilion County found that indemnity was not warranted and

dismissed the complaint under sections 2--615 and 2--619 of the

Code of Civil Procedure (735 ILCS 5/2--615, 2--619 (West 1994)).

The appellate court reversed, holding that genuine issues of

material fact existed which precluded judgment as a matter of law

for the city. 267 Ill. App. 3d 375. We granted the city's petition

for leave to appeal (155 Ill. 2d R. 315), and we reverse.

                                BACKGROUND

     The present appeal arises out of attempts by plaintiffs to

recover attorney fees and litigation expenses incurred by the

former commissioners and corporation counsel in their defense of

criminal charges of official misconduct and conflict of interest.

The criminal prosecutions resulted from the manner in which the

group negotiated the settlement of a lawsuit filed against the

commissioners and the city.

     In January 1987, a group of African-American residents of

Danville filed a lawsuit in federal district court against the city

and its commissioners alleging that the nonpartisan, at-large,

citywide process for electing commissioners excluded African-

American representation and diluted minority voting strength,

thereby violating the Voting Rights Act of 1965 (42 U.S.C. §1973b

(1982 & Supp. V 1987)). The commissioners and corporation counsel

negotiated a proposed settlement of the voting rights lawsuit which

would change the form of government from a mayor-commissioner

system to a mayor-alderman system with aldermen elected from seven

two-member districts. The settlement also provided that the present

commissioners would be appointed as administrators of the various

departments that corresponded with their current respective

commission duties. These newly created administrative positions

would be guaranteed for a minimum of three years at salaries the

commissioners would set themselves.

     The Vermilion County State's Attorney, arguing that the

proposed settlement was a conflict of interest, issued subpoenas

for the commissioners and corporation counsel to appear before the

grand jury. The federal district court enjoined the grand jury

proceedings and added the State's Attorney to the proceedings

before it. Subsequently, the federal district court held hearings

on the proposed settlement. These hearings revealed that the

commissioners and the corporation counsel knew that they could not

prevail in the voting rights litigation. The commissioners

contended, however, that they needed to stay in office for a period

of time after the new aldermen were elected in order to ensure a

smooth transition into the new system of government. The federal

district court approved and entered the consent decree settling the

voting rights suit and dissolved the injunction against the State's

Attorney.

     Less than two weeks later, the commissioners enacted a new

indemnity ordinance. The ordinance, suggested by the corporation

counsel, added indemnification for city appointees, which included

the positions of corporation counsel and the new department

administrators. In addition to civil indemnity, the ordinance

provided indemnity for criminal actions if the person seeking

indemnity had no reasonable cause to believe his conduct was

unlawful and the act or omission was within the scope of the office

or employment.

     Soon thereafter, the State's Attorney reconvened the grand

jury. At the grand jury proceedings, the commissioners testified

that they would receive personal benefits under the federal consent

decree and that they would never have agreed to the settlement

without the retention provisions. In addition, the corporation

counsel testified that the group felt that they were being asked to

sacrifice their personal positions and that "if they were going to

give up something, they were entitled to something in return."

Subsequently, the grand jury returned an eight-count indictment

against the commissioners and corporation counsel charging official

misconduct and conflict of interest.

     The federal district court again enjoined the state

prosecution on the grounds that it had previously resolved the

issue of the commissioners' and corporation counsel's criminal

liability. However, the federal court of appeals reversed, finding

that the district court had only determined that the city had the

power to enter into the decree, and not that the negotiation

process was lawful. Derrickson v. City of Danville, 845 F.2d 715,

723 (7th Cir. 1988).

     Subsequently, the group stood trial in the circuit court of

Vermilion County on the criminal charges of violating conflict of

interest (Ill. Rev. Stat. 1989, ch. 24, par. 3--14--4; ch. 102,

par. 3) and official misconduct (Ill. Rev. Stat. 1989, ch. 38, par.

33--3) statutes. During the bench trial, the commissioners and

corporation counsel admitted that they had no right to require that

they retain their jobs as a condition of settling the voting rights

litigation and that they were not legally entitled to retention.

The circuit court found all of the commissioners and the

corporation counsel guilty of official misconduct (Ill. Rev. Stat.

1989, ch. 38, par. 33--3(c)) and violating the prohibitions against

municipal officials holding pecuniary interests in governmental

contracts (Ill. Rev. Stat. 1989, ch. 24, par. 3--14--4(a); ch. 102,

par. 3(a)). The commissioners were each sentenced to two years'

conditional discharge and fined $1,000. The corporation counsel was

sentenced to two years' conditional discharge, 90 days'

imprisonment, and fined $5,000.

     While the appeal of their convictions was still pending before

the appellate court, Commissioner Wilbur Scharlau died. The

appellate court abated all proceedings against Scharlau ab initio

and vacated his conviction. Subsequently, the appellate court

reversed the convictions (People v. Scharlau, 193 Ill. App. 3d 280

(1990)); however, this court reversed the appellate court and

reinstated the convictions (People v. Scharlau, 141 Ill. 2d 180

(1990)). Thereafter, the commissioners and corporation counsel were

unsuccessful in seeking a writ of habeas corpus in federal court.

Wright v. DeArmond, 977 F.2d 339, 343-44 (7th Cir. 1992). As a

result of this prolonged litigation, the group incurred attorney

fees and litigation expenses of $321,311.47.

     The present appeal arises out of plaintiffs' two-count

complaint filed in the circuit court of Vermilion County seeking

reimbursement of the attorney fees and litigation expenses, but not

criminal fines, from the city. The complaint was based on two

Danville indemnity ordinances, number 7192 (Danville, Ill.,

Ordinance No. 7192 (eff. July 8, 1986)) and number 7237 (Danville,

Ill., Ordinance No. 7237 (eff. March 10, 1987)) (count I), and on

common law indemnity (count II). The pertinent ordinance was passed

by the commissioners subsequent to the entry of the consent decree

in federal district court. The relevant language from the ordinance

follows:

               "Where the Mayor, member of the City Council, or any

          appointee of the Mayor or any member of the City Council,

          has acted in his official capacity, the City shall

          indemnify the Mayor, member of City Council, or any

          appointee of the Mayor or member of the City Council who

          was or is a party or is threatened to be made a party to

          any threatened, pending, or completed action, suit, or

          proceeding by reason of the fact that the person is or

          was the Mayor, member of the City Council, or any

          appointee of the Mayor or any member of the City Council,

          of the city. Under this indemnification, the city shall

          pay all expenses (including attorneys' fees), judgments,

          fines, and amounts paid in settlement actually and

          reasonably incurred by the person in connection with such

          action, suit, or proceeding if he acted in good faith and

          in a manner he reasonably believed to be in or not

          opposed to the best interests of the city. Such

          indemnification by the city shall apply to any criminal

          action or proceeding, if the indemnified person had no

          reasonable cause to believe his conduct was unlawful, and

          any act or omission within the scope of the office or

          employment." Danville, Ill., Ordinance No. 7237 (eff.

          March 10, 1987).

     The city subsequently filed a combined motion to dismiss

pursuant to sections 2--615 and 2--619(a)(9) of the Code of Civil

Procedure (735 ILCS 5/2--615, 2--619(a)(9) (West 1994)). In support

of its motion, the city submitted certified copies of the trial

court's findings in the criminal prosecution of the commissioners

and corporation counsel and this court's opinion affirming the

criminal convictions. The circuit court, finding no basis for

indemnity under either the ordinances or common law indemnity,

granted the city's motion to dismiss. The circuit court also

observed that the commissioners' act of amending the ordinance to

provide additional indemnity "tainted the circumstances in such a

way" that indemnity was improper. The appellate court reversed. 267

Ill. App. 3d 375. It concentrated on the language of the indemnity

ordinance and determined that the plaintiffs could conceivably

prove a set of facts that would enable them to recover and,

therefore, the city was not entitled to judgment as a matter of

law.

     The city argues before this court that the appellate court

must be reversed and the trial court's dismissal of the action

affirmed because (1) Danville's indemnity ordinance is invalid as

against the public policy which prohibits the indemnification of

expenses arising from one's own willful misconduct; (2) the

doctrine of collateral estoppel precludes plaintiffs from

relitigating the issue of scope of employment which was determined

by the commissioners' and corporation counsel's criminal

convictions; and (3) plaintiffs cannot recover under a theory of

common law indemnity because they are the ones who engaged in

wrongful conduct.

                                 ANALYSIS

     The question presented by a motion to dismiss pursuant to

section 2--615 is whether sufficient facts are contained in the

pleadings which, if established, would entitle the plaintiff to

relief. Urbaitis v. Commonwealth Edison, 143 Ill. 2d 458, 475

(1991). The circuit court should dismiss a cause of action on the

pleadings only if it is clearly apparent that no set of facts can

be proven which will entitle a plaintiff to recovery. Illinois

Graphics Co. v. Nickum, 159 Ill. 2d 469, 488 (1994). If a cause of

action is dismissed pursuant to a section 2--619 motion on the

pleadings, the questions on appeal are whether a genuine issue of

material fact exists and whether the defendant is entitled to a

judgment as a matter of law. Illinois Graphics Co., 159 Ill. 2d at

494. Nevertheless, a dismissal pursuant to section 2--619 may be

affirmed on any grounds which are called for by the record

regardless of whether the circuit court relied on those grounds or

whether the circuit court's reasoning was correct. Beckman v.

Freeman United Coal Mining Co., 123 Ill. 2d 281, 286 (1988).

                  I. Validity of the Indemnity Ordinance

     The city contends that plaintiffs cannot recover under the

indemnity ordinance because it is invalid as against public policy.

In support of this argument, the city cites cases for the general

proposition that agreements to indemnify against one's own willful

misconduct are contrary to public policy and thus unenforceable.

See, e.g., Davis v. Commonwealth Edison Co., 61 Ill. 2d 494, 500-01

(1975). However, the city's reliance on such precedent is

misplaced. All the cases cited involved indemnification under

provisions of an insurance policy or other type of contract. See

Davis, 61 Ill. 2d at 495-96 (indemnity clause in construction

contract); West Suburban Mass Transit District v. Consolidated R.

Corp., 210 Ill. App. 3d 484, 489-91 (1991) (indemnity clause in

agreement regarding use of railroad tracks); Rubenstein Lumber Co.

v. Aetna Life & Casualty Co., 122 Ill. App. 3d 717, 717-18 (1984)

(indemnity clause of insurance policy). As the city itself

observes, this case involves no contract or bargained-for agreement

which plaintiffs rely on for indemnity. Rather, plaintiffs rely on

an indemnity ordinance which was passed by the commissioners to

place liability on the municipality for certain litigation brought

against its officials. The General Assembly has expressly

authorized local public entities to indemnify their officers and

employees in certain situations. See 745 ILCS 10/2--302 (West 1994)

(local public entity may indemnify employees for judgment and costs

of certain civil actions; however, it may not indemnify punitive

damage awards); 745 ILCS 10/9--102 (West 1994) (local public entity

is empowered to pay certain tort judgments entered against an

employee).

     However, even if the indemnity ordinance does not violate

public policy, public policy is not the only limitation a local

public entity encounters when it determines how to expend its

public funds. The expenditure of public funds must be for a public

purpose. Ill. Const. 1970, art. VIII, §1; see also Elsenau v. City

of Chicago, 334 Ill. 78, 81 (1929); City of Elmhurst ex rel.

Mastrino v. City of Elmhurst, 272 Ill. App. 3d 168, 173 (1994); 65

ILCS 5/8--1--2 (West 1994). Defraying the costs of purely private

litigation has always been outside the bounds of a proper public

purpose. See, e.g., City of Chicago v. Williams, 182 Ill. 135

(1899); City of Elmhurst ex rel. Mastrino, 272 Ill. App. 3d at 173.

     Plaintiffs assert that the indemnity ordinance was enacted for

a public purpose and to benefit the city. Although a legislative

body may have broad discretion in determining what constitutes a

public purpose (People ex rel. City of Salem v. McMackin, 53 Ill.

2d 347, 355 (1972)), that discretion is not unlimited and courts

will intervene when public property is devoted to a purely private

use (City of Elmhurst ex rel. Mastrino, 272 Ill. App. 3d at 173).

An unsuccessful criminal defense involving the holder of a public

office, but not arising out of the lawful exercise of the duties of

that office, is purely private litigation (see Guerine v. City of

Northlake, 1 Ill. App. 3d 603 (1971)), and as such, absorbing the

costs of such litigation cannot be considered a proper public

purpose (City of Elmhurst ex rel. Mastrino, 272 Ill. App. 3d at

173). Moreover, even a home rule unit, such as Danville, may only

exercise powers and perform functions pertaining to its government

and affairs. Ill. Const. 1970, art. VII, §6(a). Legal expenses

privately incurred by holders of public office pursuant to their

conviction of criminal official misconduct and corruption charges

cannot reasonably be said to pertain to a home rule unit's

government and affairs.

     Plaintiffs cite City of Montgomery v. Collins, 355 So. 2d 1111

(Ala. 1978), for the general proposition that it is a proper

corporate purpose for a municipality to expend public funds to

defend its officials from criminal charges. Collins, 355 So. 2d at

1114. In City of Montgomery v. Collins, the Supreme Court of

Alabama determined that defense of police officers from criminal

perjury charges was a proper corporate purpose. However, in doing

so, the court relied primarily on the fact that the city risked

liability in subsequent civil litigation should the police officers

be convicted. Collins, 355 So. 2d at 1114-15. This concern is

inapplicable in the instant case. First, in City of Montgomery v.

Collins there was no indemnity statute or ordinance at issue.

Contrarily, the Illinois General Assembly has already addressed the

indemnity of local public employees and the corresponding civil

liability of their employing cities. See 745 ILCS 10/2--302, 9--102

(West 1994). Additionally, the commissioners and corporation

counsel were convicted of official misconduct and conflict of

interest charges for holding an interest in a government contract.

The city is at no risk of becoming involved in civil litigation

with an injured third party as a result of the convictions. In

fact, if there was any victim of the commissioners' and corporation

counsel's actions, it was the city itself. See City of Chicago ex

rel. Cohen v. Keane, 64 Ill. 2d 559, 567-68 (1976) (recognizing a

city's right to recover from its officials who are convicted of

corruption charges).

     Although plaintiffs are correct in their assertion that courts

in some jurisdictions have determined that defending a public

official from criminal charges may be a proper public purpose, it

is generally held in these jurisdictions that a valid public

purpose exists only when the authority of the municipality is

limited to the reimbursement of legal expenses incurred in a

successful defense. See Lomelo v. City of Sunrise, 423 So. 2d 974,

976-77 (Fla. App. 1983) (costs of defending public official for

misconduct charges served public purpose only because official was

acquitted of charges); Ellison v. Reid, 397 So. 2d 352, 354 (Fla.

App. 1981); Snowden v. Anne Arundel County, 295 Md. 429, 439, 456

A.2d 380, 385 (1983) (indemnity ordinance served public purpose

primarily because it limited reimbursement to only those public

officials who had successfully defended themselves against criminal

charges); Bowens v. City of Pontiac, 165 Mich. App. 416, 420, 419

N.W.2d 24, 26 (1988) (Shepherd, J., concurring); Sonnenberg v.

Farmington Township, 39 Mich. App. 446, 449, 197 N.W.2d 853, 854

(1972); Kroschel v. City of Afton, 512 N.W.2d 351, 355 (Minn. App.

1994); Valerius v. City of Newark, 84 N.J. 591, 596, 423 A.2d 988,

991-92 (1980); Beckett v. Board of Supervisors, 234 Va. 614, 619

n.7, 363 S.E.2d 918, 921 n.7 (1988). Still, other states have held

that the costs of defending a public official from criminal or

official misconduct charges is never a proper public purpose. See

Hall v. Thompson, 283 Ark. 26, 28-29, 669 S.W.2d 905, 906-07

(1984); Bowling v. Brown, 57 Md. App. 248, 260, 469 A.2d 896, 902

(1984); Corning v. Village of Laurel Hollow, 48 N.Y.2d 348, 353-54,

398 N.E.2d 537, 540-41, 422 N.Y.S.2d 932, 935-36 (1979); Township

of Manalapan v. Loeb, 126 N.J. Super. 277, 278-79, 314 A.2d 81, 81-

82 (1974) (no authority for indemnification of municipal officer

for costs of defending criminal charges which amount to official

misconduct); Silver v. Downs, 493 Pa. 50, 55-57, 425 A.2d 359, 362-

64 (1981); see also 56 Am. Jur. 2d Municipal Corporations §208

(1971) (municipality has no power to reimburse an official for

expenses incurred in defense of official misconduct charges); 63A

Am. Jur. 2d Public Officers and Employees §406 (1984) (members of

governing body may not expend public funds to shield themselves

from consequences of own unlawful and corrupt acts); 3 McQuillin on

Municipal Corporations §12.137.10 (3d rev. ed. 1990) (municipality

cannot expend money to reimburse its officer for expenses incurred

in defending official misconduct charges). Under the principles of

all these cases, plaintiffs would not be able to recover the

expenses of the unsuccessful criminal defense of the commissioners

and corporation counsel from the city.

     Further, the purpose of indemnification, so as not to inhibit

capable individuals from seeking public office, has no relevance in

the context of the criminal conduct involved in this case. No

official of public government should be encouraged to engage in

criminal acts by the assurance that he will be able to pass defense

costs on to the taxpayers of the community he was elected to serve.

See Powers v. Union City Board of Education, 124 N.J. Super. 590,

596, 308 A.2d 71, 75 (1973). To the contrary, holding public

officials personally liable for the expenses incurred in

unsuccessfully defending charges of their criminal misconduct in

office tends to protect the public and to secure honest and

faithful service by such servants. Indeed, allowing expenditure of

public funds for such use would encourage a disregard of duty and

place a premium upon neglect or refusal of public officials to

perform the duties imposed upon them by law. Bowling v. Brown, 57

Md. App. 248, 258, 469 A.2d 896, 901 (1984) ("[T]o reimburse

[convicted public officials] for their legal expenses would not

encourage the `faithful and courageous discharge of duty on the

part of public officials.' [Citation.] On the contrary, it would

encourage the reverse"). The types of individuals who are drawn to

these corrupt practices should not be given any incentive to seek

public office.

     Our holding is also compatible with the articulated purpose of

the official misconduct and conflict of interest statutes, which is

to keep the loyalties of public officials to their public trust

undivided and to compel them to act in a lawful manner while acting

in their official capacities. Fellhauer v. City of Geneva, 142 Ill.

2d 495, 506 (1991); Scharlau, 141 Ill. 2d at 198; People v. Samel,

115 Ill. App. 3d 905, 910-11 (1983). To allow the use of public

funds to reimburse a convicted official for his legal expenses

would shield that official from the entire consequences of his

illegal conduct, thus frustrating the purpose of those statutes. In

conclusion, the city has neither the duty nor the authority to

reimburse plaintiffs for legal fees incurred in the unsuccessful

defense of criminal official misconduct and conflict of interest

charges. Therefore, to the extent it attempts to indemnify

officials convicted of crimes for their attorney fees and costs

incurred in their unsuccessful criminal defense, we hold the

Danville ordinance invalid. In so holding, we expressly make no

determination regarding the authority of any municipality or home

rule unit to indemnify their officers and employees who are found

not guilty of criminal conduct.

                          II. Scope of Employment

     In the event that the public purpose doctrine did not prevent

reimbursement of plaintiffs for their criminal litigation expenses,

plaintiffs still could not recover under the ordinance or any

statute because the commissioners' and corporation counsel's

actions, as a matter of law, were outside the scope of their

employment. We disagree with the appellate court's determination

that scope of employment is not a real issue in the case. Acting

within the scope of their office or employment is a prerequisite

for plaintiffs to receive indemnity under the specific terms of the

ordinance. Danville, Ill., Ordinance No. 7237 (eff. March 10,

1987). Moreover, a statutory requirement for any indemnification of

employees of local public entities is that the underlying act

occurred within the scope of employment. 745 ILCS 10/2--302, 9--102

(West 1994). Finally, under a traditional respondeat superior

analysis, an employer can be liable for the torts of his employee,

however, only for those torts that are committed within the scope

of that employment. See Pyne v. Witmer, 129 Ill. 2d 351, 359

(1989); see generally Restatement (Second) of Agency §219 (1958).

Therefore, because there are no means for the city to indemnify the

commissioners and corporation counsel unless their actions were

within the scope of their employment, it is dispositive in this

case.

     While even the criminal acts of an employee may fall within

the scope of employment (see, e.g., Webb v. Jewel Cos., 137 Ill.

App. 3d 1004, 1006 (1985); Restatement (Second) of Agency §231

(1958)), if the employee's actions are different from the type of

acts he is authorized to perform or were performed purely in his

own interest, he has departed from the scope of employment (see

Sunseri v. Puccia, 97 Ill. App. 3d 488, 493 (1981); Restatement

(Second) of Agency §228(2) (1958)). Moreover, an employer is not

responsible for acts which are clearly inappropriate to or

unforeseeable in the accomplishment of an authorized result.

Serious crimes are generally unforeseeable because they are

different in nature from what employees in a lawful occupation are

expected to do. See Restatement (Second) of Agency §231, Comment a

(1958); see also Webb, 137 Ill. App. 3d at 1006; Nelson v. Nuccio,

131 Ill. App. 2d 261, 263 (1971). Further, if a deviation is

exceedingly marked and unusual, the employee may be found to be

outside the scope of employment as a matter of law. Pyne, 129 Ill.

2d at 361.

     We recognize that this case does not involve the circumstances

typically present in a traditional respondeat superior analysis--

when an injured third party attempts to hold an employer

vicariously liable for the torts of an employee. Nevertheless, the

principles advanced in the context of imposing vicarious liability

upon an employer are applicable in cases seeking to impose duties

upon a public entity to indemnify and defend its employees because

both liabilities are premised upon employee acts occurring within

the scope of employment. See Deloney v. Board of Education, 281

Ill. App. 3d 775 (1996). In applying these principles to the case

at bar, it is clear that the commissioners' and corporation

counsel's self-dealing was committed solely for their personal

benefit and had no relation to their positions as elected

officials. Although the commissioners had authority to negotiate a

settlement of the voting rights lawsuit, utilizing the negotiations

to illegally advance their own personal interests by preserving

their employment were actions obviously different from those they

were authorized to perform. No elected official can be authorized

to act in a manner that violates official misconduct and conflict

of interest statutes. Hall v. Thompson, 283 Ark. 26, 28-29, 669

S.W.2d 905, 906-07 (1984) (official duties of a public official

never require him to participate in criminal activities). Moreover,

this court has already determined that the commissioners' and

corporation counsel's acts were unauthorized. Scharlau, 141 Ill. 2d

at 196.

     Additionally, the group's actions, which resulted in their

convictions of official misconduct and conflict of interest

charges, were clearly committed for their own interests. A

conviction for corrupt practices establishes that a public official

exploited his fiduciary position for his personal benefit. City of

Chicago ex rel. Cohen v. Keane, 64 Ill. 2d 559, 565 (1976).

Furthermore, the essence of a violation of the statute "is that a

public official has attempted to personally enrich himself or

another by an act exceeding his `lawful authority' as a public

servant." People v. Samel, 115 Ill. App. 3d 905, 909 (1983). The

official misconduct statutes are intended to punish the activities

of public officials who have exploited their official positions to

the detriment of the public good. People v. Steinmann, 57 Ill. App.

3d 887, 897 (1978). The commissioners and corporation counsel

admitted that they would not have settled the voting rights action

without the provisions ensuring their continued employment for a

fixed term and the right to set their own salaries. In addition,

the group knew that they were not legally entitled to these

provisions. Such self-dealing can be nothing more than acting

purely in one's own interests. See Board of Chosen Freeholders of

the County of Burlington v. Conda, 164 N.J. Super. 386, 390 396

A.2d 613, 617 (1978) (misconduct involving personal gain at public

expense cannot be said to benefit the public).

     While the commissioners' and corporation counsel's public

employment provided the opportunity for their misconduct, by no

stretch of the imagination could their actions be deemed an

extension of their legitimate functions as elected officials.

Therefore, their conduct neither arose out of nor was incidental to

the performance of their duties and, thus, was not within the scope

of their employment. See Bowling v. Brown, 57 Md. App. 248, 258,

469 A.2d 896, 901 (1984); Valerius v. City of Newark, 84 N.J. 591,

596, 423 A.2d 988, 990-91 (1980) (criminal conviction for misuse of

office constitutes a "perversion and prostitution" of duties and

establishes that the acts were not within scope of employment);

Powers v. Union City Board of Education, 124 N.J. Super. 590, 596,

308 A.2d 71, 75 (1973) (criminal misconduct originating out of

performance of duties was not act occurring within the scope of

those duties). In this case, the record clearly reveals that the

commissioners and corporation counsel stepped aside from their

duties as officers of the City of Danville and acted for the sole,

unlawful, independent, and personal purpose of promoting their own

interests. As a matter of law, their actions were outside the scope

of their employment such that the city owed no statutory duty to

defend or indemnify them in the criminal action.

                         III. Collateral Estoppel

     The city also contends that inherent in the commissioners' and

corporation counsel's criminal convictions is the determination

that they also acted outside the scope of their employment. The

city then reasons that the doctrine of collateral estoppel thus

bars plaintiffs from relitigating the scope of employment issue in

this case. Plaintiffs respond that scope of employment was not an

issue decided in People v. Scharlau. Alternatively, plaintiff Kevin

Scharlau independently argues that he cannot be bound by any

determinations made in People v. Scharlau because Wilbur Scharlau's

conviction was vacated.

     Notwithstanding these contentions, we determined today that,

as a matter of law, by virtue of their criminal convictions the

commissioners and corporation counsel acted outside the scope of

their employment. Furthermore, we determined that the public

purpose doctrine prevents reimbursement of plaintiffs in this

instance. Therefore, we need not address whether People v. Scharlau

decided the scope of employment issue or the effect of collateral

estoppel upon this litigation.

                         IV. Common Law Indemnity

     Plaintiffs also contend that they are entitled to

reimbursement of their legal expenses under a common law theory of

indemnity. They cite cases for the general proposition that a

principal is required to indemnify an agent for losses resulting

from the good-faith execution of the agency. See Lundy v. Whiting

Corp., 93 Ill. App. 3d 244, 258 (1981); American Telephone &

Telegraph Co. v. Leveque, 30 Ill. App. 2d 120, 128 (1961); Lomelo

v. City of Sunrise, 423 So. 2d 974, 976 (Fla. App. 1983); Ellison

v. Reid, 397 So. 2d 352, 354 (Fla. App. 1981); State ex rel. Crow

v. City of St. Louis, 174 Mo. 125, 148, 73 S.W. 623, 630 (1903).

However, none of these cases support plaintiffs' position. American

Telephone & Telegraph Co. v. Leveque and Lundy v. Whiting Corp.

both dealt with the issue of implied indemnity among joint

tortfeasors. Specifically, when two tortfeasors have breached a

duty to a plaintiff, the passively negligent tortfeasor may be

allowed to shift liability to the actively negligent tortfeasor.

See American Telephone & Telegraph Co., 30 Ill. App. 2d at 127-28;

Lundy v. Whiting Corp., 93 Ill. App. 3d at 258. This theory is not

applicable to the instant case and plaintiffs have conceded as much

in their briefs.

     The other cases offered by plaintiffs stand for the

propositions that a public official acting pursuant to authority,

within the scope of employment, and while serving a public purpose

may be indemnified by a municipality for expenses he incurs. See

Lomelo, 423 So. 2d at 976; Ellison, 397 So. 2d at 354; State ex

rel. Crow, 174 Mo. at 148, 73 S.W. at 630. We have already

determined that the commissioners and corporation counsel were not

acting pursuant to authority or within the scope of their

employment and they were not serving a public purpose. Therefore,

plaintiffs' action for common law indemnity also must fail.

                                CONCLUSION

     For the foregoing reasons, the judgment of the appellate court

is reversed. The judgment of the circuit court dismissing the

complaint is affirmed.

Appellate court judgment reversed;

                                         circuit court judgment affirmed.

                                                                         

     CHIEF JUSTICE BILANDIC took no part in the consideration or

decision of this case.