194 So. 548
## CITY OF BIRMINGHAM v. WILKINSON.
### 6 Div. 557.

Supreme Court of Alabama.
March 7, 1940.

W. J. Wynn and John S. Foster, both of Birmingham, for appellant.

Frank A. Wilkinson, of Birmingham, for appellee.

BOULDIN, Justice.

Action against the City of Birmingham to recover an attorney's fee stipulated in a contract for defending an injunction suit. There was judgment for plaintiff. The city appeals.

The pleadings are voluminous. Elaborate briefs deal with rulings presented in assignments of error.

We deal with principles of law limiting a statement of the case to matters deemed essential to a discussion of the applicable law of the case.

The governing body of the City of Birmingham is a City Commission, composed of three members, a president of the commission and two associate commissioners. The action of the majority with-

in the lawful functions of the governing body is the action of the city.

On August 27, 1937, a taxpayer's bill in equity was filed against the two associate commissioners, individually, and in their official capacity, alleging that after their defeat for re-election "they entered into a pernicious, iniquitious and fraudulent conspiracy to use the powers conferred upon them by their official positions to exploit the city treasury of Birmingham for their own private use and benefit, to manipulate the purchasing power of said City to the enhancement of their personal fortunes, and to defraud the City of Birmingham and its tax payers by diverting money from the treasury of said City and using the same for their personal and private financial aggrandizement. As evidencing said conspiracy and the acts of said respondents in furtherance thereof, complainant shows the following facts."

Then followed charges at length. We summarize:

That in furtherance of the conspiracy to exploit the city treasury and defraud the taxpayers, they concocted and passed a resolution appropriating to each the sum of $4,000, purporting to be due on unpaid salaries, after accepting a reduction of salaries in setting up the city budget; had drawn a portion of such appropriations and were demanding the remainder.

That in furtherance of said conspiracy to exploit the city treasury for their own private use and defraud the taxpayers they had repealed an ordinance requiring wholesale distributors of beer to pay an excise tax and substituted a blanket license tax resulting in the loss of $75,000 revenue; that this was brought about by a slush fund raised by beer dealers, etc.

That despite the precarious condition of the finances of the city and no emergency needs for new fire equipment, these commissioners, by resolution, called for bids on certain equipment of the fire department, estimated to cost $181,000, and planned to purchase same at prices twenty to thirty per cent above those obtaining in other cities of the same class.

That pursuant to authority to set up a budget for the fiscal year, beginning September 1, 1937, these commissioners were threatening and intended to include the price of such equipment in the budget, which action "is but a part and parcel of the aforesaid scheme and conspiracy on the part of said respondents to manipulate the purchasing power of said city to subserve their selfish, private interests and to defraud the tax payers of said city; and complainant avers that in furtherance of said scheme and conspiracy said respondents are conniving at the excessive estimated charges for said equipment or they are acting in collusion with certain concerns which purpose to sell said equipment to said City at a price between twenty and thirty per cent more than the reasonable market value thereof."

The bill further alleges these commissioners plan to set up an unlawful, excessive and fictitious budget as part of the plan to carry out the scheme for purchasing the fire equipment, "that the credit of the city will be impaired, its funds ruthlessly and fraudulently exploited," etc.

The bill prayed a temporary injunction, restraining and enjoining these commissioners, individually and in their official capacity, from purchasing the proposed fire equipment and "from making and adopting a budget for the City of Birmingham for the fiscal year commencing September 1, 1937, which calls or provides for the expenditure or contract to expend any amount of money in excess of the revenue collected or estimated in good faith to be due and payable during said year into the treasury of said city; that said respondents be further enjoined from doing any act calculated to cause the City Commission of the City of Birmingham to appropriate any sum necessary for the expenditures of the several departments of said city, and for the interest on its bonded and other indebtedness, exceeding in the aggregate within ten per centum of the estimated receipts of said City for the fiscal year of said city beginning September 1, 1937, or to cause said City Commission to appropriate from the funds of said City, received and to be received during said fiscal year, for the purpose of operating said city or otherwise, any sum or sums in the aggregate exceeding the annual legally authorized revenue of said city during said fiscal year. And complainant further prays that upon the final hearing of this cause said injunction will be made permanent."

A temporary injunction was granted as prayed, the writ promptly issued and served.

Thereupon the respondents conferred with appellee with reference to the defense of the suit, resulting in the passage of a resolution by the commission employ-

ing appellee, and another member of the bar, as counsel to defend the suit, fixing their fees at $1,000 each. The resolution was adopted by the vote of these two commissioners alone.

█ Admittedly the authority of a city to employ legal counsel is incident to the power to sue and be sued.

In *Fitts v. Commission of City of Birmingham et al.*, 224 Ala. 600, 141 So. 354, dealing with the broad powers of the City of Birmingham in the promoting and safeguarding the welfare of the people of the city, we held it was within the implied power of the governing body to employ at public expense representatives to safeguard by legal advice and other proper means the interests of the city in legislative matters in a pending session of the Legislature. We there recognized this view was more liberal than obtained in several states. The case must be treated as a recognition of the enlarging sphere of interests of a city like Birmingham, and of implied power in the city to employ legal counsel or other agents when such services are needed.

█ When, in the exercise of such discretion, counsel has been employed, the service has been performed, and the city declines to pay on the ground of illegality, the burden is on the city to show wherein the employment was unlawful as matter of law, or of law and fact. With this premise in mind, we note other facts.

█ The injunction was issued upon a nominal bond of $200. As the first, and quite proper proceeding, the employed counsel moved to require an adequate injunction bond. Reasonable counsel fees for the defense of the suit, a well-recognized element of damages, in case the injunction was improperly issued, was the question to which evidence was directed on this motion. Pending this hearing the bill was dismissed on motion of the complainant.

Meantime, an answer had been prepared denying in much detail and in aggressive terms all the charges of fraud, corruption, and graft made in the bill.

This answer, never filed, but put in evidence under the general issue is looked to only on the question of services performed.

We quote from the very earnest reply brief on behalf of the city:

"We ask the court to pass particularly on this question:

"Has a public officer the authority to spend public money, or to obligate the public to spend public money, in employing counsel to defend him in a suit charging him with public robbery?

"That question looms above all others. For upon the proper answer to that question depends not only sound decision of this case, but the future public morality in Alabama."

We must deal with this grave inquiry on the record before us.

The charges of fraud, corruption and graft so strongly asserted in the bill above outlined were never proved in that cause, but were abandoned upon a dismissal of the bill on motion of complainant therein. None of the pleas in the present action to which demurrers were sustained asserts the truth of any of these charges. The real inquiry then is: Did the fact that the suit was based on allegations of fraud on the part of these commissioners, disable the city, through them, to employ counsel to defend the suit, regardless of the truth or falsity of the charges of fraud and corruption? On the basis of these averments, these commissioners had been enjoined and inhibited to exercise their functions as members of the governing body in relation to important municipal functions committed to them. Being a majority of the governing body, the injunction operated to strip the city itself of power to function in the matters enjoined.

█ The city is a party in interest to a bill to enjoin members of its governing body from exercising the functions committed to them. It cannot be said the city had no interest in the defense of the injunction suit.

But apart from a direct interest of the city, has the city, through its governing body, authority to defend its officials at public expense against unfounded and defamatory charges of corruption in an injunction suit of this character?

█ "A municipal corporation has implied power to employ counsel to render services in matters of proper corporate interest, including the prosecution or defense of suits by or against the corporation, and the defense of suits against municipal officers for acts done on behalf of the corporation while in the honest discharge of their duties." 43 C.J. p. 890, § 1620 and notes.

204

Cases there cited include defense of members of the city council. Cases in several states, (Note 10—e) sustain the defense of police officers in suits for false imprisonment. See 43 C.J. p. 695, § 1156 and notes. See, also, 19 R.C.L. § 79; 3 McQuillin Municipal Corporations, § 1275.

■ That members of the governing body cannot expend the public money for counsel to shield themselves from the consequences of their own unlawful and corrupt acts goes without saying. We are in full accord with the opinion in Smith v. Mayor, etc, of City of Nashville, 4 Lea 69, 72 Tenn. 69.

■ But the power and duty of the city to defend the members of its governing body against unfounded and unsupported charges of corruption and fraud is quite another matter. The same policy which demands the holding of public officers to strict account in matters of public trust, also demands their protection against groundless assaults upon their integrity in the discharge of public duty.

A somewhat difficult situation arises, where the officials charged with fraud and corruption are members of the governing body who must act upon the propriety vel non of defending the suit at public expense.

Where they have undertaken so to do, the payment of the fee or the enforcement of such obligation while the suit to be defended is still pending, is quite questionable.

■ But where the suit has ended favorably to the city and its officers, and a suit is brought to recover the fee due for service performed, the burden is on the city to aver and prove the truth of the charges of corruption and fraud. Prima facie, and maybe conclusively, abandonment of the case is to be taken as evidence that counsel were properly employed. This, we think, is expressive of the justice of the case, and supported by the reasoning of text writers above cited and the authorities therein noted.

. It is further insisted that the employment of special counsel to defend the injunction suit was unlawful in that it was forbidden by the City Charter.

Section 12 of the Act providing the form of government of the City of Birmingham, Acts 1923, page 114, provided: "The powers and duties in such cities shall be distributed into and among three departments, as follows: 1. Department of General Administration, Finances and Accounts * * *. 2. Department of Public Improvements * * *. 3. Department of Public Safety * * *."

A general outline of the powers and duties of each department follows the naming thereof.

Among other things it is declared the Department of General Administration, Finances and Accounts, "shall be especially charged with the administration of all legal affairs of the city."

This section further provides: "The powers and duties pertaining to each of said departments shall be fixed by the commission according to the general plan above outlined, and one member of said commission shall be assigned to the head of each such department and shall supervise and control its operation subject to the authority of the commission."

Section 11 of the Act provides: "Each and every officer and employee of said city, except the health officer and such persons as may be employed by him to enforce quarantine, shall be selected and employed by the commission or under its direction, and all salaries and wages paid by said city, except as herein otherwise provided, shall be fixed by said commission. The commission shall prescribe and may at any time change the powers, duties, and titles of all subordinate officers and employees of said city, except the title of the city health officer."

Pleas, to which demurrers were sustained, averred that the City Commission by ordinance had set up a legal staff, composed of a city attorney and assistants, who were ready, able, and willing to defend this suit.

In early times, when the need for legal services for municipalities was far less than now, the tendency of judicial decision was to look with disfavor on the employment of legal counsel, going so far at times as to hold there was no implied power so to do.

■ Many cases have arisen wherein the charter, expressly, or by clear implication, has committed all the legal business of the city to a city officer, usually a city attorney. In such cases, the rule is thus stated in 43 C.J. p. 890, § 1620: "The fact that a statute has established in the municipality an office of municipal attorney, or a law department, does not negative the implication of a right in the municipality to

exercise the power of employing an attorney, nor does the fact that the office of municipal attorney is being discharged by an efficient incumbent, who is willing to act in the premises, of itself negative the existence of a necessity for the employment of additional counsel; but the employment of other counsel is improper and unauthorized where the municipal attorney or law department is charged by charter or statute with the conduct of all the municipal law business, and there are no special circumstances which make the calling in of outside assistance vitally necessary."

In 19 R.C.L. p. 774, § 79, the law is thus stated: "Most municipal corporations of any magnitude employ an attorney upon an annual salary. Such attorney is a municipal officer, known as corporation counsel, city solicitor or city or town attorney and attends to all the ordinary litigation to which the municipality is a party. A municipal corporation which has established such an office may, however, employ other counsel to act in a particular case or to assist its regular counsel in any piece of litigation in which it may seem necessary, unless it is provided in its charter that the control and management of all the legal business of the municipality shall be in the hands of its regularly appointed legal officer."

The subject is treated in many aspects in McQuillin on Municipal Corporations. Volume 2, § 199, deals with the authority of officers or departments to employ special counsel when the governing body has provided to represent them a city attorney who is ready, able and willing so to do.

The authority of governing body to employ special counsel is treated in Volume 3, § 1276, which reads: "The general question as to the power of a municipal corporation, having a law officer charged by charter or statute with the care of the legal work of the corporation, to employ another person to perform any part of his official duties, has been much discussed in judicial decisions. The cases upon the subject are numerous and conflicting. Each case in a very large degree, must depend upon the proper construction of the charter or statute creating and regulating the municipality, especially those provisions appertaining to its law officers. Some cases hold that where the corporation has regular counsel, charged with the duty of conducting all the law business in which the corporation is interested, contracts for additional or extra legal services are unau-

thorized. But where the law does not make it the duty of the official to perform the particular legal services required, other attorneys may be employed for this purpose at the expense of the public. However, authority is not wanting to sustain the proposition that additional or extra counsel may be employed in special matters and suits, notwithstanding the corporation has officers charged with the duty of attending to all legal affairs in which the corporation is interested."

A full citation and review of authorities appears in notes to this section.

The charter of the City of Birmingham does not create the office of city attorney nor define his duties. Sections 11 and 12 must be construed together. The set-up of a Law Department is left wholly with the governing body. Subordinate officers and employees include all offices created by the commission. It is given express authority to define their duties and change them at will.

In Lyddy v. Long Island City, 104 N.Y. 218, 10 N.E. 155, relied upon by appellant as authority, the statute expressly set up a Law Department headed by a chief officer, with fixed salary and term of office, and expressly declared to have charge and conduct all law business of the municipality and its departments.

It is sometimes said that where all the law business is by ordinance committed to a specified officer or department, special counsel may not be employed. This has particular application to employment of special counsel by officers and departments bound by the laws made by the governing body.

■ The power of the governing body to modify its ordinances is a continuing one.

■ The City Commission of Birmingham empowered to create its own legal set-up, to prescribe the duties of the officers thereof, and change them when deemed advisable, in our opinion carries the power to employ special counsel when deemed advisable to protect the city or its officers.

The injunction issued in this case created something of an emergency situation. That the officers charged with such flagrant fraud and corruption preferred to employ counsel known to them because of the personal relations of attorney and client did not affect the legality of the employment.

We would make it clear that the power to employ special counsel in this case did not depend upon a vacancy in the office of city attorney. The suspension of the city attorney, summarily, without notice or hearing, upon a simulated charge of "improper behavior" for the purpose of creating a vacancy opening· the way to selection of other counsel, if true, as averred, was misconduct in office, from which no right to employ special counsel could arise. Nor do we commit ourselves to the proposition that such misconduct is immune from inquiry save on the face of the records. No discussion of the rule in this regard need be indulged. ·43 C.J. 297, 298, §§ 312, 313; Pilcher v. City of Dothan et al., 207 Ala. 421, 93 So. 16.

The plea of set-off, undertaking to recover money had and received by appellee as a fee for representing the city before the Public Service Commission in the matter of obtaining better telephone rates, was without merit. The decision in Fitts v. City Commission of City of Birmingham et al., supra, is sufficient authority on this question.

Moreover, an action for money had and received is equitable in character. There could .be no basis of equity for recovery of money paid pursuant to promise, for services actually rendered, of great benefit to the city, the amount paid being fixed by competent arbitrators after the work was done, and benefits known.

We are of opinion the employment of special counsel was not unlawful because appellee had not qualified, been enrolled, and certified from an eligible list in the classified service under the Civil Service Act applicable to the City of Birmingham. Acts 1935, p.·691.

We need not, and do not, deal with the status of the city attorney, and his assistants, as officers of the city, engaged in a continuing service, with· salaries payable from the city treasurer, prior to the Amendatory Act of 1939, more· clearly defining the classified service.

In Yeilding et al. v. State ex rel. Wilkinson, 232 Ala. 292, 167 So. 580, 582, a proceeding to test the constitutionality of the Civil ·Service Act, supra, we held: "The one dominating purpose and thought of the lawmakers, in adopting the act now before us, was to secure greater economy and a better and more efficient administration of the affairs of the counties and cities affected by the act."

It is none the less true that as a means to these ends Merit System Acts look to security of the faithful officer or employee, in the permanence of his employment, at least for the period prescribed by law, and to getting away from the spoils system with its evils in the matter of efficiency and economy, and in the building of the political machine.

The attorney at law is a member of a learned profession, granted a license after much preparation, and upon special examination directed to his special qualifications for his profession. This license is a valuable franchise. In its exercise, the customary practice of the lawyer includes the entering into professional relations with his client for the conduct of a particular cause only. No fixed time element is involved. Statutes in restriction of his franchise by excluding such temporary employment by a municipality like Birmingham should be clear.

In studying the entire structure of the Civil Service Act of 1935, we observe that by Section 18 the Personnel Board, notwithstanding the presence of an efficient city attorney, may, in its discretion, employ independent counsel to represent it at public expense.

As for expense, we note that in an injunction suit, when a temporary writ is issued, the law provides indemnity by way of an injunction bond to cover reasonable attorneys' fees incurred in case ʼthe injunction is dissolved. Mayor and Aldermen of East Lake v. De Vore et al., 169 Ala. 237, 53 So. 1018; Marengo County et al. v. Matkin et al., 144 Ala. 574, 42 So. 33, 6 Ann.Cas. 902.

Judges issuing such writs should be careful to require an adequate bond.

We are of opinion the employment of special counsel in this case was not unlawful because violative of the Civil Service Act.

We do not think such view is out of harmony with Smith v. City Commission of Birmingham et al., 236 Ala. 114, 181 So. 122; nor Phillips v. City of Birmingham, 235 Ala. 176, 178 So. 209.

Indeed, the latter case stresses the true element in acquiring a status in the classified service.

We find no error to reverse in the rulings of the trial court.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.