ROBERT C. FLANAGAN *v.* RICHARD
BLUMENTHAL ET AL.
(SC 16634)

Sullivan, C. J., and Borden, Katz, Zarella and Lavery, Js.[1]

[1] This case originally was argued before a panel of this court consisting of Chief Justice Sullivan, and Justices Borden, Katz, Vertefeuille and Zarella. Subsequent to oral argument, Justice Vertefeuille recused herself and Chief Judge Lavery of the Appellate Court was added to the panel. Judge Lavery read the briefs and listened to the tape recording of the oral argument.

Argued April 16, 2002—officially released August 12, 2003

*Gregory T. D'Auria*, associate attorney general, with whom were *Jane R. Rosenberg* and *Eliot D. Prescott*, assistant attorneys general, and, on the brief, *Richard Blumenthal*, attorney general, for the appellants (defendants).

*Matthew E. Frechette*, with whom was *Roger J. Frechette*, for the appellee (plaintiff).

*Opinion*

BORDEN, J. The defendants, Attorney General Richard Blumenthal and the state of Connecticut, appeal[2] from the judgment of the trial court denying their motion to dismiss, on the ground of sovereign immunity, the claim of the plaintiff, Robert C. Flanagan, a former Superior Court judge, seeking reimbursement, pursuant

[2] The defendants appealed from the trial court's judgment to the Appellate court. We then granted the defendants' motion to transfer the case to this court pursuant to Practice Book § 65-2 and General Statutes § 51-199 (c).

to General Statutes § 5-141d,[3] for legal fees and expenses he had incurred while defending against a civil rights action filed against him by another state employee.[4] The dispositive issue in this appeal is whether the trial court improperly determined that § 5-

[3] General Statutes § 5-141d provides: "(a) The state shall save harmless and indemnify any state officer or employee, as defined in section 4-141, and any member of the Public Defender Services Commission from financial loss and expense arising out of any claim, demand, suit or judgment by reason of his alleged negligence or alleged deprivation of any person's civil rights or other act or omission resulting in damage or injury, if the officer, employee or member is found to have been acting in the discharge of his duties or within the scope of his employment and such act or omission is found not to have been wanton, reckless or malicious.

"(b) The state, through the Attorney General, shall provide for the defense of any such state officer, employee or member in any civil action or proceeding in any state or federal court arising out of any alleged act, omission or deprivation which occurred or is alleged to have occurred while the officer, employee or member was acting in the discharge of his duties or in the scope of his employment, except that the state shall not be required to provide for such a defense whenever the Attorney General, based on his investigation of the facts and circumstances of the case, determines that it would be inappropriate to do so and he so notifies the officer, employee or member in writing.

"(c) Legal fees and costs incurred as a result of the retention by any such officer, employee or member of an attorney to defend his interests in any such civil action or proceeding shall be borne by the state only in those cases where (1) the Attorney General has stated in writing to the officer, employee or member, pursuant to subsection (b), that the state will not provide an attorney to defend the interests of the officer, employee or member, and (2) the officer, employee or member is thereafter found to have acted in the discharge of his duties or in the scope of his employment, and not to have acted wantonly, recklessly or maliciously. Such legal fees and costs incurred by a state officer or employee shall be paid to the officer or employee only after the final disposition of the suit, claim or demand and only in such amounts as shall be determined by the Attorney General to be reasonable. In determining whether such amounts are reasonable the Attorney General may consider whether it was appropriate for a group of officers, employees or members to be represented by the same counsel.

"(d) The provisions of this section shall not be applicable to any state officer or employee to the extent he has a right to indemnification under any other section of the general statutes."

[4] " 'The general rule is that the denial of a motion to dismiss is an interlocutory ruling and, therefore, is not a final judgment for purposes of appeal.' *Shay* v. *Rossi*, 253 Conn. 134, 164, 749 A.2d 1147 (2000) [overruled in part

141d constitutes a waiver by the state of its sovereign immunity.[5] We conclude, pursuant to our recent holding in *St. George* v. *Gordon*, 264 Conn. 538, 551, 825 A.2d 90 (2003), that § 5-141d waives the state's immunity from liability but does not waive the state's immunity from suit. Accordingly, we reverse the judgment of the trial court denying the defendants' motion to dismiss the action on the ground of sovereign immunity.

The plaintiff brought this action against the defendants for indemnification pursuant to § 5-141d. The defendants moved to dismiss the action on the ground of sovereign immunity. The trial court denied the motion to dismiss.

The record reveals the following facts and procedural history. On March 14, 1996, Penny Ross, now known as Penny Ross-Tackach, a court reporter for the state judicial branch, filed a complaint with the commission on human rights and opportunities (commission) against the plaintiff and the judicial branch. In her complaint, Ross-Tackach alleged that the plaintiff had violated her civil rights under state and federal law by using his position of authority to coerce her into having a sexual relationship with him.

Ross-Tackach also filed a complaint, pursuant to General Statutes § 51-51*l*, with the judicial review council

on other grounds, *Miller* v. *Egan*, 265 Conn. 301, 325, 828 A.2d 549 (2003)]. In *Shay*, however, we concluded that the denial of a motion to dismiss based on a colorable claim of sovereign immunity is an immediately appealable final judgment because 'the order or action so concludes the rights of the parties that further proceedings cannot affect them.' Id., 164–65." *Martinez* v. *Dept. of Public Safety*, 263 Conn. 74, 77 n.5, 818 A.2d 758 (2003).

[5] The defendants also claim that, even if § 5-141d constitutes a waiver of the state's sovereign immunity, the plaintiff has failed to satisfy the necessary predicate under § 5-141 (c) (2), which requires that he be "thereafter found to have acted . . . in the scope of his employment," because the claim brought against the plaintiff for which he seeks reimbursement arose out of a consensual sexual relationship he had with the claimant. Because we resolve this appeal on the issue of sovereign immunity, we need not reach that issue.

(review council) making substantially similar allegations against the plaintiff. The review council ultimately determined that the allegations of coercion were unfounded. Nevertheless, the review council concluded that the plaintiff had violated canons 1 and 2A of the Code of Judicial Conduct because he had engaged in a consensual sexual relationship with Ross-Tackach, a married court employee, a fact to which the plaintiff had testified before the review council. Accordingly, the review council determined that the plaintiff should be censured publicly. The plaintiff appealed from the review council's decision to this court claiming, inter alia, that "as a matter of law, it is not a violation of [canons 1 or 2A of the Code of Judicial Conduct] for a judge to have had a three and one-half year consensual affair with a married court reporter regularly assigned to his courtroom over the course of the affair." *In re Flanagan*, 240 Conn. 157, 188, 690 A.2d 865, cert. denied, 522 U.S. 865, 118 S. Ct. 172, 139 L. Ed. 2d 114 (1997). We affirmed the review council's decision, concluding that "this was not purely personal conduct, because it took place with a person with whom [the plaintiff] had an ongoing, daily professional relationship" and because "the risk of injury to public confidence in the integrity of the judiciary is substantially heightened in this instance as opposed to a case where the affair was with a person unconnected with his daily activities as a judge of the Superior Court." Id., 191.

After Ross-Tackach filed her complaint with the commission, the plaintiff requested that the defendants indemnify and defend him pursuant to § 5-141d.[6] The

---

[6] The plaintiff also had filed an action seeking to enjoin the proceedings before the commission on the grounds of, inter alia, estoppel and res judicata, in light of the review council's findings that the charges were unfounded. The trial court's decision denying injunctive relief on the ground that the plaintiff had failed to exhaust his administrative remedies was affirmed on appeal. See *Flanagan* v. *Commission on Human Rights & Opportunities*, 54 Conn. App. 89, 733 A.2d 881, cert. denied, 250 Conn. 925, 738 A.2d 656 (1999).

attorney general's office notified the plaintiff that it had "determined that the allegations regarding a sexual relationship between [Ross-Tackach] and [the plaintiff] certainly do not involve allegations concerning conduct taken 'in the discharge of his duties or within the scope of his employment' within the meaning of . . . § 5-141d such as to entitle [the plaintiff] to representation and indemnification by the state." Accordingly, the defendants denied the plaintiff's request.

Thereafter, the plaintiff filed an action against the defendants in the United States District Court for the District of Connecticut, alleging that the defendants' refusal to indemnify and represent him had denied him due process under the United States constitution and had violated state law. The defendants moved to dismiss the plaintiff's action. The District Court dismissed, on sovereign immunity grounds, the plaintiff's federal due process claim seeking damages for the defendants' failure to indemnify him. *Flanagan* v. *Blumenthal*, United States District Court, Docket No. 3:98CV148 (D. Conn. November 22, 1999). The District Court also dismissed the plaintiff's due process claim seeking injunctive relief for the defendants' failure to represent him, after concluding that the plaintiff had failed to establish a cognizable property interest because he had not alleged sufficient facts to demonstrate that he had been acting within the scope of his employment, as required under § 5-141d. Id. After reviewing Connecticut law, the allegations in the complaint, and this court's decision in *In re Flanagan*, the District Court further determined that the plaintiff's consensual sexual relationship "could not, as a matter of law, possibly be within the scope of [his] employment . . . ." Id. In light of its determinations with respect to the plaintiff's federal constitutional claims, the District Court declined to exercise supplemental jurisdiction over the plaintiff's state law claims.

Id. Accordingly, the District Court granted the defendants' motion to dismiss the plaintiff's claim.[7] Id.

Subsequently, after receiving a notice of the right to sue from the federal Equal Employment Opportunity Commission, Ross-Tackach filed an action against the plaintiff and the judicial branch in the United States District Court for the District of Connecticut, alleging violations of her civil rights. Thereafter, pursuant to a stipulation entered into by the parties, the District Court dismissed that action with prejudice. *Tackach* v. *Flanagan*, United States District Court, Docket No. 300CV022357 (D. Conn. April 25, 2001).

The plaintiff then filed the present action seeking damages, fees and costs in the Superior Court, alleging that the defendants' failure to indemnify and defend him violated § 5-141d, as well as General Statutes §§ 4-141 and 4-165, and article first, §§ 8 and 20, of the Connecticut constitution.[8] The defendants again moved to dismiss, claiming that, under the doctrine of sovereign immunity, the trial court lacked subject matter jurisdiction. The trial court denied the defendants' motion to dismiss, relying in part on *Martinez* v. *Dept. of Public*

---

[7] That judgment subsequently was affirmed on alternate grounds by the United States Court of Appeals for the Second Circuit. *Flanagan* v. *Blumenthal*, United States Court of Appeals, Docket No. 00-7307, 2000 U.S. App. Lexis 25441 (2d Cir. October 12, 2000). The Second Circuit determined that the broad discretion granted to the attorney general, under § 5-141d, to determine whether representation is "appropriate," precluded the plaintiff from establishing a cognizable property interest in representation by the state. Id. That court further determined that, because § 5-141d provides an adequate postdeprivation remedy for the defendants' refusal to indemnify in the form of an action for reimbursement, the plaintiff's due process claim regarding indemnification likewise failed. Id.

[8] The plaintiff also alleged that the defendants' conduct violated article one, § 8, of the United States constitution. The plaintiff did not elaborate on the possible basis for this claim in his brief to the trial court and does not raise that claim in this appeal. We, therefore, deem that claim to be abandoned and decline to review it. *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 1, 38–39, 717 A.2d 77 (1998).

*Safety,* Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV00377191 (December 22, 2000) (28 Conn. L. Rptr. 569), a case in which the Superior Court had rejected a claim of sovereign immunity based on a statute similar to § 5-141d. This appeal by the defendants followed.[9]

We subsequently affirmed the trial court's judgment. *Martinez* v. *Dept. of Public Safety,* 258 Conn. 680, 784 A.2d 347 (2001) *(Martinez I).* Thereafter, we granted the motion for rehearing en banc filed by the defendant in that case. In *Martinez* v. *Dept. of Public Safety,* 263 Conn. 74, 76, 818 A.2d 758 (2003) *(Martinez II),* this court concluded that General Statutes (Rev. to 2003) § 53-39a,[10] which was at issue in that case, waived the state's immunity from liability but did not waive the state's immunity from suit. Accordingly, the en banc rehearing of *Martinez II* resulted in reversal of the trial court's decision. Id., 88.

The defendants claim that the plaintiff's action is barred by the doctrine of sovereign immunity. We agree.

---

[9] The denial of a motion to dismiss based on the doctrine of sovereign immunity is a final judgment for purposes of appeal. See footnote 4 of this opinion.

[10] General Statutes (Rev. to 2003) § 53-39a provides: "Whenever, in any prosecution of an officer of the Division of State Police within the Department of Public Safety, or a member of the Office of State Capitol Police or any person appointed under section 29-18 as a special policeman for the State Capitol building and grounds, the Legislative Office Building and parking garage and related structures and facilities, and other areas under the supervision and control of the Joint Committee on Legislative Management, or a local police department for a crime allegedly committed by such officer in the course of his duty as such, the charge is dismissed or the officer found not guilty, such officer shall be indemnified by his employing governmental unit for economic loss sustained by him as a result of such prosecution, including the payment of any legal fees necessarily incurred."

As amended by No. 03-97, § 2, of the 2003 Public Acts, which was effective June 3, 2003, the following sentence was added to the end of General Statutes (Rev. to 2003) § 53-39a: "Such officer may bring an action in the Superior Court against such employing governmental unit to enforce the provisions of this section."

Subsequent to *Martinez II*, and most recently, this court decided *St. George* v. *Gordon*, supra, 264 Conn. 538, in which we applied *Martinez II* to a claim for indemnity brought pursuant to § 5-141d, the same statute on which the plaintiff relies in the present case. In *St. George*, we reaffirmed our analysis in *Martinez II* regarding when a statute would be held to have waived sovereign immunity from suit, and we held that § 5-141d was not such a statute. Id., 551–53. In that case, we also considered the effect of No. 03-97, § 2, of the 2003 Public Acts on § 5-141d, and we concluded that, although that recently enacted legislation was intended to clarify the legislative intent regarding General Statutes (Rev. to 2003) § 53-39a, the statute involved in *Martinez II*, it did not affect § 5-141d. Id., 551–52 n.13. It is clear that *St. George* controls the present case, and that, therefore, the plaintiff's claim is barred by the doctrine of sovereign immunity.[11]

The judgment is reversed and the case is remanded to the trial court with direction to render judgment dismissing the plaintiff's complaint.

In this opinion ZARELLA and LAVERY, Js., concurred.

SULLIVAN, C. J., concurring. I concur with the result reached by the majority, based on this court's decision in *St. George* v. *Gordon*, 264 Conn. 538, 825 A.2d 90 (2003), that, in enacting General Statutes § 5-141d, the legislature waived the state's immunity from liability but did not waive the state's immunity from suit. Because sovereign immunity acts as an absolute bar to suit, even

---

[11] The defendants claim, further, that the indemnification of a state employee pursuant to § 5-141d rests within the sole discretion of the attorney general, and that, therefore, the plaintiff may not even apply to the claims commissioner for relief. We decline to rule on that claim because it is premature and is far beyond what is necessary to decide the merits of this appeal.

the most meritorious claims against the state must be dismissed if immunity from suit has not been waived. In my view, that is the case here.

General Statutes § 5-141d (c) provides that, in order for a state officer to receive reimbursement for legal fees expended in defending against a lawsuit brought against him in his official capacity, that officer must show that "(1) the Attorney General has stated in writing to the officer, employee or member, pursuant to subsection (b), that the state will not provide an attorney to defend the interests of the officer, employee or member, and (2) the officer, employee or member is thereafter found to have acted in the discharge of his duties or in the scope of his employment, and not to have acted wantonly, recklessly or maliciously. . . ." In the present case, Penny Ross, now known as Penny Ross-Tackach, accused her employer, the judicial branch of the state of Connecticut, acting through the plaintiff, Robert C. Flanagan, in his official position as a Superior Court judge, of employment discrimination. Specifically, she alleged in a variety of forums, including the judicial review council and the United States District Court, that the plaintiff had violated her rights by subjecting her to repeated sexual assaults. The judicial review council determined that the allegations of sexual assault were unfounded and that the sexual relations between Ross-Tackach and the plaintiff had been consensual, and the United States District Court dismissed her complaint with prejudice. Nevertheless, the named defendant, the attorney general, refused to reimburse the plaintiff for legal fees incurred in the course of defending himself against the allegations, concluding that the allegations of a sexual relationship between the plaintiff and Ross-Tackach, a state employee, did not involve conduct taken "in the discharge of his duties or in the scope of his employment," as required by § 5-141d (c).

Although I agree that the consensual relationship between the plaintiff and Ross-Tackach fell outside the scope of the plaintiff's employment, I do not believe that that fact is determinative of the plaintiff's claim for reimbursement of his legal expenses. Rather, I believe that the dispositive question is whether a *false* claim that a state official has engaged in illegal conduct in the workplace falls within the scope of the statute. I would conclude that it does.

In her concurring opinion, Justice Katz states that "the plaintiff's allegations regarding the consensual sexual relationship, supported by his testimony before the judicial review council, indicate that his relationship with Ross-Tackach gave rise to the injury [i.e., costs incurred in defending himself against false claims of sexual assault] for which he now seeks reimbursement . . . ." It may be true that, if the plaintiff had not engaged in a consensual sexual relationship with Ross-Tackach, she never would have made her now discredited allegations of sexual assault. That does not mean, however, that, as a legal matter, the consensual sexual relationship "gave rise" to allegations of sexual assault. This becomes clear if one substitutes some other, more remote and less emotionally charged, conduct for the consensual sexual relationship. For example, if Ross-Tackach had falsely accused the plaintiff of sexual harassment in the workplace because he had declined to recommend her for a country club membership—conduct that is clearly not related to employment—it would be absurd to state that this conduct "gave rise" to the accusations and, therefore, the plaintiff should not be reimbursed for expenses incurred in defending himself.[1] I believe that a central purpose of § 5-141d is

---

[1] Justice Katz states that, "in order to obtain reimbursement for legal costs under § 5-141d (c), the employee must be found, in fact, to have been acting in the scope of his employment." When the accusations against the state employee are *completely baseless*, however, such a finding simply cannot be made. For example, the plaintiff in the present case cannot establish

to protect state employees from the financial consequences of vindictive and baseless lawsuits against them in their official capacities, regardless of what instigated the lawsuit. By doing so, the statute also advances the state's interest in preserving the public perception of the integrity of its employees.[2] In my view, the attorney general's determination that the plaintiff is not entitled to reimbursement contravened these purposes.

My intention here is not to defend the plaintiff's relationship with Ross-Tackach. I strongly believe, however, that it is unjust, unwise and against the legislative policy embodied in § 5-141d for the attorney general to penalize the plaintiff for that conduct in this context. Indeed, "[t]he same policy which demands the holding of public officers to strict account in matters of public trust, also demands their protection against groundless assaults upon their integrity in the discharge of public duty." *Birmingham* v. *Wilkinson*, 239 Ala. 199, 204, 194 So. 548 (1940). Ross-Tackach's claim against the plaintiff constituted such a groundless assault. Accordingly, I believe that, although the plaintiff's lawsuit against the attorney general is barred by the doctrine of sovereign immunity, he would prevail on the merits of the lawsuit if it were allowed.

KATZ, J., concurring. On appeal, the defendants, attorney general Richard Blumenthal and the state of Connecticut, proffer two reasons why the trial court improperly denied their motion to dismiss the claim of

that the alleged sexual assaults against Ross-Tackach were within the scope of his employment because there were no such sexual assaults.

[2] In this case, for example, even though the plaintiff had been publicly censured for his consensual sexual relationship with Ross-Tackach, the state had an interest in ensuring that he was not falsely labeled as a rapist. There is a vast difference between the public's perception of a consensual, albeit inappropriate, sexual relationship between a high public official and a subordinate and its perception of a high public official's using his office to coerce a subordinate into providing sexual favors.

the plaintiff, former Superior Court Judge Robert C. Flanagan, seeking reimbursement for legal fees pursuant to General Statutes § 5-141d (c).[1] First, they contend that the trial court improperly determined that § 5-141d constitutes a waiver of the state's sovereign immunity. Second, they contend that, even if § 5-141d constitutes such a waiver, the plaintiff's claim is barred because it

[1] General Statutes § 5-141d provides: "(a) The state shall save harmless and indemnify any state officer or employee, as defined in section 4-141, and any member of the Public Defender Services Commission from financial loss and expense arising out of any claim, demand, suit or judgment by reason of his alleged negligence or alleged deprivation of any person's civil rights or other act or omission resulting in damage or injury, if the officer, employee or member is found to have been acting in the discharge of his duties or within the scope of his employment and such act or omission is found not to have been wanton, reckless or malicious.

"(b) The state, through the Attorney General, shall provide for the defense of any such state officer, employee or member in any civil action or proceeding in any state or federal court arising out of any alleged act, omission or deprivation which occurred or is alleged to have occurred while the officer, employee or member was acting in the discharge of his duties or in the scope of his employment, except that the state shall not be required to provide for such a defense whenever the Attorney General, based on his investigation of the facts and circumstances of the case, determines that it would be inappropriate to do so and he so notifies the officer, employee or member in writing.

"(c) Legal fees and costs incurred as a result of the retention by any such officer, employee or member of an attorney to defend his interests in any such civil action or proceeding shall be borne by the state only in those cases where (1) the Attorney General has stated in writing to the officer, employee or member, pursuant to subsection (b), that the state will not provide an attorney to defend the interests of the officer, employee or member, and (2) the officer, employee or member is thereafter found to have acted in the discharge of his duties or in the scope of his employment, and not to have acted wantonly, recklessly or maliciously. Such legal fees and costs incurred by a state officer or employee shall be paid to the officer or employee only after the final disposition of the suit, claim or demand and only in such amounts as shall be determined by the Attorney General to be reasonable. In determining whether such amounts are reasonable the Attorney General may consider whether it was appropriate for a group of officers, employees or members to be represented by the same counsel.

"(d) The provisions of this section shall not be applicable to any state officer or employee to the extent he has a right to indemnification under any other section of the general statutes."

does not fall within the ambit of the statute, which requires that he be "thereafter found to have acted . . . in the scope of his employment . . . ." General Statutes § 5-141d (c). Conversely, the plaintiff claims that the trial court properly determined that his claim was not barred by the doctrine of sovereign immunity. The plaintiff further contends that the allegations in his complaint satisfy the statutory requirement of acting "in the scope of his employment" because he was required to defend a "spurious employment discrimination case brought by a disgruntled employee of the [j]udicial [d]epartment."[2]

I disagree with the majority's conclusion that the trial court improperly determined that § 5-141d constitutes a waiver of the state's sovereign immunity. I would conclude, however, that the defendants are entitled to prevail under their second claim, namely, that, even if § 5-141d constitutes such a waiver, the plaintiff has failed to satisfy the necessary statutory predicate that he be "thereafter found to have acted . . . in the scope of his employment," because the claim brought against the plaintiff for which he seeks reimbursement arose as a result of a consensual sexual relationship. Therefore, I would conclude that the court had jurisdiction to con-

---

[2] The plaintiff, citing *Dillon* v. *Bailey*, United States District Court, Docket No. 3:98CV1576 (JBA) (December 1, 1998), also claims in his brief that because, in the past, the defendants have indemnified a public official after a jury expressly had found that the official had acted wilfully and maliciously, contrary to the statutory requirement under § 5-141d; see footnote 1 of this concurring opinion; the defendants are bound to reimburse him. Because I would conclude, as I state herein, that the plaintiff has failed to satisfy another predicate to reimbursement, that is, that he was acting in the scope of his employment, I would not reach this issue. *Briggs* v. *McWeeny*, 260 Conn. 296, 316 n.14, 796 A.2d 516 (2002) (court need not reach issue unnecessary to resolution of case); *Duni* v. *United Technologies Corp.*, 239 Conn. 19, 23 n.5, 682 A.2d 99 (1996) (same). If, however, as the plaintiff claims occurred in *Dillon*, "the [court] insisted, in writing that the office of the Attorney General, under oath file a 'Declaration of Promise' stating that the Attorney General promised to indemnify the [official]," it is unclear how the satisfaction of such an order by the court would constitute an admission that subsequently would bind the defendants.

sider the case, but that the plaintiff cannot satisfy the prerequisite to reimbursement under the statute as a matter of law.

I

In *St. George* v. *Gordon*, 264 Conn. 538, 547–53, 825 A.2d 90 (2003), this court recently considered whether the same statute at issue in the present case, § 5-141d, abrogated sovereign immunity so as to permit state employees to bring an action in Superior Court against the state for indemnification. I dissented in that case based on my disagreement with the majority's conclusion that § 5-141d does not abrogate sovereign immunity because, although § 5-141d provides an express waiver of immunity from liability, it neither expressly nor implicitly waives immunity from suit. See id., 551–53. I concluded therein that "§ 5-141d, when viewed in light of the statutory language, its legislative history and the policy that the statute was intended to effectuate, indicates the legislature's intent to abrogate sovereign immunity." Id., 565 (*Katz, J.*, dissenting). I see no reason to deviate from that recent determination. Therefore, predicated on the reasoning in my dissenting opinion in *St. George*, I would conclude in the present case that the trial court properly declined to dismiss the plaintiff's action based upon the defendants' claim of sovereign immunity.

II

Therefore, I next address the question of whether the plaintiff can satisfy, as a matter of law, the statutory prerequisite to reimbursement under § 5-141d. As a preliminary matter, I address the plaintiff's contention that we cannot review the issue of the statutory prerequisite. Specifically, the plaintiff contends that reviewing whether he had acted in the scope of his employment would require this court to resolve a factual dispute, and that such an exercise is improper when reviewing

a trial court's denial of a motion to dismiss. See *Mahoney* v. *Lensink*, 213 Conn. 548, 567, 569 A.2d 518 (1990) (when reviewing motion to dismiss, this court is "limited to the facts alleged in the plaintiff[s'] complaint" [internal quotation marks omitted]); *Barde* v. *Board of Trustees*, 207 Conn. 59, 62, 539 A.2d 1000 (1988) ("motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone" [internal quotation marks omitted]). As explained further herein, I disagree that review of this issue requires the resolution of a factual dispute.

Although most claims raising the issue of whether an employee had acted in the scope of his or her employment present a question of fact, necessitating a case-by-case inquiry, cases may arise "in which an employee is so clearly within or without the scope of his employment that the question is one of law . . . ." *King* v. *Board of Education*, 203 Conn. 324, 327, 524 A.2d 1131 (1987); accord *Tonelli* v. *United States*, 60 F.3d 492, 495 (8th Cir. 1995) ("[a]lthough usually a factual issue, determining whether the scope of employment includes an act that departs markedly from the employer's business may be a question of law"); *A-G Foods, Inc.* v. *Pepperidge Farm, Inc.*, 216 Conn. 200, 207, 579 A.2d 69 (1990) ("occasional cases where a servant's digression from duty is so clear-cut that the disposition of the case becomes a matter of law" [internal quotation marks omitted]). I would conclude that the present case is one of those instances in which the plaintiff, as a matter of law, cannot be found to have acted in the scope of his employment.

"In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader."

*Pamela B.* v. *Ment*, 244 Conn. 296, 308, 709 A.2d 1089 (1998). In examining the facts alleged, I am mindful of certain guiding principles. Pleadings are to be read "broadly and realistically rather than narrowly and technically." (Internal quotation marks omitted.) *Travelers Ins. Co.* v. *Namerow*, 261 Conn. 784, 795, 807 A.2d 467 (2002). Statutes in derogation of sovereign immunity, however, are to be construed narrowly. *Hunte* v. *Blumenthal*, 238 Conn. 146, 152, 680 A.2d 1231 (1996); *Spring* v. *Constantino*, 168 Conn. 563, 570, 362 A.2d 871 (1975). "[A] party attempting to sue under the legislative exception [to sovereign immunity] must come clearly within its provisions, because [s]tatutes in derogation of sovereignty should be strictly construed in favor of the state, so that its sovereignty may be upheld and not narrowed or destroyed . . . . *Berger, Lehman Associates, Inc.* v. *State*, 178 Conn. 352, 356, 422 A.2d 268 (1979)." (Internal quotation marks omitted.) *Babes* v. *Bennett*, 247 Conn. 256, 262, 721 A.2d 511 (1998).

Whether the plaintiff's complaint alleges facts that, construed in the light most favorable to him, demonstrate that he "is thereafter found to have acted . . . in the scope of his employment," within the meaning of § 5-141d (c), is a question of statutory interpretation. "Statutory construction . . . presents a question of law over which our review is plenary. . . . [Therefore, in accordance with] our long-standing principles of statutory [interpretation], our fundamental objective is to ascertain and give effect to the intent of the legislature. . . . In determining the intent of a statute, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *State* v. *Vickers*, 260 Conn. 219, 223–24, 796 A.2d 502 (2002).

Section § 5-141d sets forth measures to protect state employees from personal liability and legal costs under certain circumstances. See footnote 1 of this concurring opinion; see also *Hunte* v. *Blumenthal*, supra, 238 Conn. 151, 153. Subsection (c) of that section, the reimbursement provision at issue in the present case, is triggered by the attorney general's denial of a state employee's request that the state provide for his or her defense, pursuant to § 5-141d (b). Section 5-141d (c) provides in relevant part that "[l]egal fees and costs incurred as a result of the retention by any such . . . employee . . . of an attorney to defend his interests in any such civil action or proceeding shall be borne by the state only in those cases where . . . the . . . employee . . . *is thereafter found to have acted* in the discharge of his duties or *in the scope of his employment,* and not to have acted wantonly, recklessly or maliciously. . . ." (Emphasis added.)

Section 5-141d does not define the phrase "scope of employment."[3] We have had numerous opportunities,

---

[3] Indeed, although many other indemnification provisions impose a "scope of employment" requirement; see, e.g., General Statutes §§ 1-125, 4-16a, 4-165, 7-273h, 7-308, 7-465, 10a-109s, 22a-134*ll*, 32-47 and 32-206; only one provision, General Statutes § 4-165, includes any definition of the phrase, and that definition, by its express terms, is not all-inclusive. Section 4-165 provides in relevant part: "For the purposes of this section 'scope of employment' shall include, but not be limited to, representation by an attorney appointed by the Public Defender Services Commission as a public defender, assistant public defender or deputy assistant public defender or an attorney appointed by the court as a special assistant public defender of an indigent accused or of a child on a petition of delinquency, representation by such other attorneys, referred to in section 4-141, of state officers and employees, in actions brought against such officers and employees in their official and individual capacities, the discharge of duties as a trustee of the state employees retirement system, the discharge of duties of a commissioner of Superior Court hearing small claims matters or acting as a fact-finder, arbitrator or magistrate or acting in any other quasi-judicial position, and the discharge of duties of a person appointed to a committee established by law for the purpose of rendering services to the Judicial Department including, but not limited to, the Legal Specialization Screening Committee, the State-Wide Grievance Committee, the Client Security Fund Committee and the State Bar Examining Committee; provided such actions

however, to consider the meaning of that phrase; see, e.g., *State* v. *Casanova*, 255 Conn. 581, 596, 767 A.2d 1189 (2001) (in context of criminal charge); *Larsen Chelsey Realty Co.* v. *Larsen*, 232 Conn. 480, 500–503, 656 A.2d 1009 (1995) (in context of Connecticut Unfair Trade Practices Act); *Antinozzi* v. *A. Vincent Pepe Co.*, 117 Conn. 11, 13–14, 166 A. 392 (1933) (in context of tort claim); including in the context of indemnification. See *Gurliacci* v. *Mayer*, 218 Conn. 531, 550–54, 590 A.2d 914 (1991); *King* v. *Board of Education*, supra, 203 Conn. 332–40. To be considered as having acted in the scope of employment for purposes of indemnification, this court has stated that "the legal injury must be incurred by an employee [covered by the statute] and that the legal injury *must be causally connected to that employment* . . . ." (Emphasis added.) *King* v. *Board of Education*, supra, 337. Although the employee need not be working "solely or only for the benefit of the employer," some tangible benefit must accrue to the employer for the employee's actions to be connected to the employment. Id., 336; see also 1 Restatement (Second), Agency § 228 (1958) (defining scope of employment in tort context).[4] The injury is not causally connected when the employee's action precipitating the injury is "motivated by purely personal considerations entirely extraneous to [the] employer's interest." *Antinerella* v. *Rioux*, 229 Conn. 479, 499, 642 A.2d 699 (1994), overruled in part on other grounds, *Miller* v. *Egan*, 265 Conn. 301, 325, 828 A.2d 549 (2003); see *King* v. *Board*

arise out of the discharge of the duties or within the scope of employment of such officers or employees. . . ."

[4] The Restatement (Second), supra, § 228, provides in relevant part: "(1) Conduct of a servant is within the scope of employment if, but only if:

"(a) it is of the kind he is employed to perform;

"(b) it occurs substantially within the authorized time and space limits;

"(c) it is actuated, at least in part, by a purpose to serve the master . . . .

"(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master."

*of Education,* supra, 339–40 (superintendent's signing of agreement with board of education that personally benefited him causally connected to employment when agreement also benefited board and town).

Moreover, § 5-141d (c) further requires that the party seeking reimbursement is *"thereafter found* to have acted . . . in the scope of his employment . . . ." (Emphasis added.) This requirement thereby indicates that, in determining whether the employee is entitled to reimbursement, the appropriate focus is not on the *allegations* that gave rise to the claim for which the employee seeks reimbursement, but, instead, on a finding of fact made *after* the resolution of the claim. See *Hunte* v. *Blumenthal,* supra, 238 Conn. 167 n.18 (declining to address whether plaintiffs qualified for indemnification and defense under § 5-141d absent factual determination whether plaintiffs had acted in scope of employment). Indeed, reference to subsection (b) of § 5-141d bolsters this interpretation. Subsection (b) sets forth the conditions for the provision of counsel by the state, whereas subsection (c) sets forth the conditions for reimbursement for legal costs should the state not represent the employee pursuant to subsection (b). It is noteworthy that subsection (b) only requires allegations of certain misconduct, whereas subsection (c) instead requires that the employee is "thereafter found to have acted . . . in the scope of his employment . . . ." See *M. DeMatteo Construction Co.* v. *New London,* 236 Conn. 710, 717, 674 A.2d 845 (1996) ("[w]here a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed" [internal quotation marks omitted]). Because the attorney general's decision whether to represent a state employee is made prior to judgment on the claim, it is self-evident in that context why allegations alone suffice. Indeed,

this same temporal distinction is reflected in subsection (a) of § 5-141d, which requires both that the employee is alleged to have engaged in certain misconduct and is thereafter found to have acted within the scope of his employment. See footnote 1 of this concurring opinion. Accordingly, in order to obtain reimbursement for legal costs under § 5-141d (c), the employee must be found, in fact, to have been acting in the scope of his employment.

With this interpretation in mind, I now turn to the plaintiff's complaint to determine whether he has alleged facts, viewed in the light most favorable to him, establishing that he was acting in the scope of his employment. The plaintiff's complaint sets forth certain allegations that formed the basis of the civil action brought against the plaintiff by Penny Ross-Tackach, a former court reporter who had worked for the state judicial branch and with whom the plaintiff had engaged in a consensual sexual relationship. Specifically, his complaint sets forth Ross-Tackach's allegation that the plaintiff had "subjected her to repeated sexual harassment . . . ." The plaintiff's complaint further provides that Ross-Tackach's "complaint clearly alleges that [the plaintiff had] acted within the scope of his employment between the hours of 9 a.m. and 5 p.m. on working days."

It is well settled, in the context of sexual harassment claims, that a supervisor's sexual relationship with a subordinate generally is not considered to fall within the scope of the supervisor's employment.[5] See *Burlington*

---

[5] I note that the inquiry regarding whether an employee has acted within the scope of his or her employment when sexually harassing another employee may be distinct from the inquiry as to whether the *employer* may be liable for such conduct. See *Burlington Industries, Inc.* v. *Ellerth*, 524 U.S. 742, 758, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998). In *Ellerth*, the United States Supreme Court analyzed the scope of employment question under traditional agency law principles, which require that the agent is motivated, in part, by a motive to serve the principal. Id., 755–57. Accordingly, the court concluded that sexual harassment generally is not within the scope of employment, although it noted that "[t]here are instances . . . where a

*Industries, Inc.* v. *Ellerth,* 524 U.S. 742, 756–57, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998) ("[A] supervisor acting out of gender-based animus or a desire to fulfill sexual urges may not be actuated by a purpose to serve the employer. . . . The harassing supervisor often acts for personal motives, motives unrelated and even antithetical to the objectives of the employer." [Citations omitted.]); *Ierardi* v. *Sisco,* 119 F.3d 183, 188 (2d Cir. 1997) (A correction officer's alleged sexual harassment of a prison teacher, if true, "was prompted purely by personal reasons unrelated to the employer's interest. . . . Under such circumstances, the conduct—although occurring during the course of his employment—is outside the scope of [the officer's] employment." [Citation omitted; internal quotation marks omitted.]); *Harrison* v. *Eddy Potash, Inc.,* 112 F.3d 1437, 1444 (10th Cir. 1997) ("sexual harassment simply is not within the job description of any supervisor or any other worker in any reputable business" [internal quotation marks omitted]). Moreover, merely because an employee's actions occur during work hours, those actions do not thereby necessarily constitute conduct within the scope of

supervisor engages in unlawful discrimination with the purpose, mistaken or otherwise, to serve the employer." Id., 757, citing *Sims* v. *Montgomery County Commission,* 766 F. Sup. 1052, 1075 (M.D. Ala. 1990) (supervisor acting in scope of employment when employer had policy of discouraging women from seeking advancement and "sexual harassment was simply a way of furthering that policy"). The court further explained that scope of employment is not the sole basis for employer liability in sexual harassment claims. *Burlington Industries, Inc.* v. *Ellerth,* supra, 758. "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence . . . . The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Id., 765.

employment. "A servant acts within the scope of employment while engaged in the service of the master, and it is not synonymous with the phrase during the period covered by his employment. *Levitz* v. *Jewish Home for the Aged, Inc.*, [156 Conn. 193, 198, 239 A.2d 490 (1968)]." (Internal quotation marks omitted.) *A-G Foods, Inc.* v. *Pepperidge Farm, Inc.*, supra, 216 Conn. 209–10. Accordingly, the mere fact that Ross-Tackach had alleged that the plaintiff's conduct occurred during his normal work hours does not transform those actions, which otherwise would fall outside the scope of his employment, into ones within that scope. Therefore, had Ross-Tackach's allegations been true, it is unlikely that the plaintiff could be "thereafter found to have acted . . . in the scope of his employment" as required by § 5-141d (c).

The plaintiff contends, however, that, because the allegations of sexual harassment against him were *baseless*, his conduct per se falls within the scope of his employment. That conclusion is predicated on the plaintiff's contention that his status as a public official provided the sole basis for Ross-Tackach's complaint. The plaintiff contends, therefore, that "if a public official is sued because of his or her status as a public officer, he or she is 'in the discharge of his duties or within the scope of his employment.' " I disagree.

In the present case, the plaintiff's complaint alleges no employment-related conduct engaged in by him with respect to Ross-Tackach. Indeed, the plaintiff's complaint clearly alleges that, "the *only* activity which took place, as set forth by the Judicial Review Council, was limited to a consensual sexual relationship . . . ." (Emphasis added.) Therefore, the plaintiff's allegations regarding the consensual sexual relationship, supported by his testimony before the judicial review council, indicate that his relationship with Ross-Tackach gave rise to the injury for which he now seeks reim-

bursement of legal fees. There simply is no benefit to which the plaintiff can point, however, that would accrue to his employer from such purely personal conduct.[6] Accordingly, the plaintiff's complaint clearly alleges that he was not acting in the "scope of his employment," within the meaning of § 5-141d (c).

Additionally, "[f]actual allegations contained in pleadings upon which the case is tried are considered judicial admissions and hence irrefutable as long as they remain in the case. . . . *West Haven Sound Development Corp.* v. *West Haven*, 201 Conn. 305, 312, 514 A.2d 734 (1986); see *State* v. *Rodriguez*, 180 Conn. 382, 396, 429 A.2d 919 (1980) (noting that [t]he vital feature of a judicial admission is universally conceded to be its conclusiveness upon the party making it, i.e. the prohibition of any further dispute of the fact by him, and any use of evidence to disprove or contradict it)

---

[6] In *In re Flanagan*, 240 Conn. 157, 191, 690 A.2d 865 (1997), this court affirmed the decision of the judicial review council that the plaintiff's conduct "was not purely personal . . . because it took place with a person with whom [the plaintiff] had an ongoing, daily professional relationship" and because "the risk of injury to public confidence in the integrity of the judiciary is substantially heightened in this instance as opposed to a case where the affair was with a person unconnected with his daily activities as a judge of the Superior Court." The conclusion I reach herein, that the plaintiff's conduct was purely personal, may be reconciled with our earlier statement when reviewing the plaintiff's appeal from the judicial review council's decision. The court's focus in *In re Flanagan*, supra, 191, in determining whether the judicial review council properly concluded that the plaintiff's conduct had violated the canons of the Code of Judicial Conduct, is substantively different than the analysis we apply to determine whether the plaintiff had acted in the scope of his employment. In the scope of employment inquiry, it is proper to consider whether some benefit accrued to the plaintiff's employer from his conduct; see *King* v. *Board of Education*, supra, 203 Conn. 336; whereas in considering whether the Code of Judicial Conduct has been violated, it is appropriate to consider whether the judge's conduct has impaired the public's confidence in the judiciary. See *In re Flanagan*, supra, 188–91. Indeed, for example, if a judge were to strike a party's counsel during an ex parte hearing, such conduct may well violate the Code of Judicial Conduct, but clearly would not be in the scope of the judge's employment.

. . . ." (Citations omitted; internal quotation marks omitted.) *Ferreira* v. *Pringle*, 255 Conn. 330, 345, 766 A.2d 400 (2001). The plaintiff's allegation that he had a consensual sexual relationship with Ross-Tackach therefore constitutes a binding judicial admission as to that fact. Had Ross-Tackach's claim against the plaintiff proceeded to trial, the trier of fact could not have concluded that the plaintiff had acted in the scope of his employment. Therefore, the plaintiff, as a matter of law, could not be "thereafter found to have acted . . . in the scope of his employment," within the meaning of § 5-141d (c).

Nevertheless, in support of his contention that a public official falsely accused of abusing his authority is entitled to reimbursement for defending against such an allegation, the plaintiff directs our attention to *Birmingham* v. *Wilkinson*, 239 Ala. 199, 194 So. 548 (1940). In *Wilkinson*, an attorney prevailed in a claim against the city of Birmingham to recover his fees for defending two associate city commissioners charged with fraud, corruption and graft after the charges were dismissed. Id., 201–202, 206. The principal issue before that court was whether the city properly could expend public funds to defend city employees charged with illegal conduct "regardless of the truth or falsity of the charges . . . ." Id., 203. In answering that question in the affirmative, the court explained: "That members of the governing body cannot expend the public money for counsel to shield themselves from the consequences of their own unlawful and corrupt acts goes without saying. . . . But the power and duty of the city to defend the members of its governing body against unfounded and unsupported charges of corruption and fraud is quite another matter. The same policy which demands the holding of public officers to strict account in matters of public trust, also demands their protection against

groundless assaults upon their integrity in the discharge of their public duty." (Citation omitted.) Id., 204.

The plaintiff relies on the *Wilkinson* court's discussion of groundless actions, however, without ever taking note of the factual context in which that case arose. The officials' conduct therein giving rise to the action against them was the performance of acts that one would expect of such officials conducting official city business: passing a resolution appropriating salaries; repealing a city ordinance requiring an excise tax in favor of one imposing a licensing tax; and proposing a city budget. Id., 202. Accordingly, the plaintiff's reliance on *Wilkinson* is misplaced. Likewise, several hypothetical situations suggested by the plaintiff in support of his position suffer from the same defect.[7]

In the present case, the only conduct the plaintiff alleges that gave rise to Ross-Tackach's action was a consensual sexual relationship. Accordingly, the action precipitating the injury for which the plaintiff seeks reimbursement was "motivated by purely personal considerations entirely extraneous to his employer's interest." *Antinerella* v. *Rioux*, supra, 229 Conn. 499. I, therefore, would reverse the trial court's judgment on the basis of my conclusion that, as a matter of law, the

---

[7] For example, the plaintiff supposes situations in which a judge reassigns a court clerk to a duty the clerk deems less desirable or initiates a disciplinary action against the clerk. Thereafter, the clerk files an employment discrimination action, falsely alleging that the judge had sexually harassed the clerk. The plaintiff also supposes a situation in which a judge renders judgment against a claimant, which thereafter leads the claimant falsely to accuse the judge of taking a bribe. We presume, in the absence of facts to the contrary, that the judge's position normally entails such conduct and the judge is acting in good faith. Under these circumstances, it readily is apparent that the judge's conduct that gave rise to the clerks' false accusations, as in *Wilkinson*, was within the scope of the judge's employment. Accordingly, contrary to the view urged by the plaintiff in the present case, it was not solely the judge's status that brought his or her actions within the scope of employment in each instance, but, rather, the judge's legitimate exercise of authority in discharging his or her duties.

plaintiff was not acting "in the scope of his employment," within the meaning of § 5-141d (c).